## 74502. JOHNSON v. THE STATE.
(363 SE2d 773)

BEASLEY, Judge.

Johnson appeals his conviction and sentence for aggravated assault, OCGA § 16-5-21, and the denial of his amended motion for new trial.

1. Appellant maintains that the trial court should have directed a verdict of acquittal at the close of the state's case and that the verdict is contrary to the evidence and without evidence to support it.

The evidence construed so as to uphold the verdict, *Rhodes v. State*, 168 Ga. App. 10, 11 (1) (308 SE2d 33) (1983), showed the following: Johnson and the victim, Wright, were attending a house party at which there was drinking and card playing. A fight broke out among Johnson and the others sitting at the card table in the dining room. The woman giving the party told those fighting to go outside. Johnson staggered through the living room, where Wright was, "stepping all over peoples' feet." He bumped up against Wright and stepped on his feet. Wright tried to grab and shake Johnson to see if Johnson knew what he was doing. Wright asked Johnson if he knew he was stepping on his feet. The two men began to fight and test each other's strength but this lasted for no more than three minutes. The hostess told them to leave. Wright went out on the front porch. He was on the porch fifteen or twenty minutes when Johnson, without saying anything, came by and cut Wright with a knife, less than an inch above one eye.

Appellant maintains specifically that there was no evidence that he used any object, much less a knife, against Wright. On the contrary, on direct, Wright testified that Johnson "came by, took the knife, cut me across my eye without me knowing it." On cross-examination, Wright reaffirmed, "he cut me with a knife . . . I saw the blade." Additionally, defendant himself testified that he was carrying a knife and that he cut Wright with it but maintained that Wright had a knife as well and that he (Johnson) inflicted the injury on Wright in self-defense. In fact, the defense admitted into evidence a knife which the defendant identified as the one he used to cut Wright.

The core of this case was credibility, to-wit, defendant's tale of self-defense versus Wright's story of unprovoked attack. Credibility of witnesses must be resolved by the jury. OCGA § 24-9-80. "The jurors must weigh and resolve any conflicts presented by the evidence. The appellate court must view the evidence in the light most favorable to the jury's verdict. [Cit.]" *King v. State*, 157 Ga. App. 733, 734 (1) (278 SE2d 491) (1981). "In this instance the jury, obviously, chose to believe the state's [witness]." *Redd v. State*, 154 Ga. App. 373 (1) (268 SE2d 423) (1980). We find the evidence sufficient for a rational trier of fact to have found Johnson guilty of aggravated assault beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *King v. State*, supra at 734 (1). Therefore the trial court was correct in refusing to direct a verdict of acquittal. OCGA § 17-9-1; *Humphrey v. State*, 252 Ga. 525, 526 (1) (314 SE2d 436) (1984).

2. Next is whether the trial court allowed the state to improperly impeach a defense witness.

On cross-examination of the witness, the hostess of the party, the state asked how many times the police had raided her house. The witness responded, "never." The defense objected and the witness reiterated, "never." The state continued, "Gambling goes on there, doesn't it?" Defendant objected, questioning that kind of impeachment. The court stated that the prosecutor had a right to a thorough and sifting cross-examination. The state then asked that defense counsel "cut down on the histrionics." Defense counsel apologized and the court told the state to proceed. The assistant district attorney again asked if gambling was going on. The witness said no, that they were "playing spades and selling food." Defendant made no further objection in this regard.

Appellant argues that the state's questions attempted to plant in the jury's mind that the witness was a criminal who was conducting a criminal enterprise at the time of the incident, and that the improper impeachment was important because the witness was crucial to the defense.

The validity of the argument is not reached because to begin with, the court made no formal ruling on defendant's objections and defendant did not pursue it, therefore defendant waived any objection to the questioning. *Ewald v. State*, 156 Ga. App. 68, 69 (3) (274 SE2d 31) (1980); *Watts v. State*, 155 Ga. App. 376, 377 (1) (271 SE2d 29) (1980). See also *Nolan v. State*, 183 Ga. App. 52, 53 (1) (357 SE2d 873) (1987). Even assuming the court's statement and actions constituted a de facto overruling of defendant's initial objections, appellant has shown no harm by the court permitting the cross-examination to proceed. The witness consistently answered in the negative. This helped dispel in the jury's mind any insinuations of illegality raised by the state's questions. Consequently, once the questions had been asked, it was more favorable to the witness and so to the defendant, to let the state pursue the questions and elicit responses rather than to leave the questions unanswered. Without harm, there can be no reversible error. *Bowen v. State*, 170 Ga. App. 49, 50 (1) (316 SE2d 33) (1984).

3. Appellant contends that the court erred in its charge on the definition of a deadly weapon when it charged, "You must first determine if the instrument used by the defendant was a deadly weapon likely to cause great bodily injury . . . ." He complains that the court had to charge that the instrument was "likely to *produce death* or great bodily injury" and that the failure to do so allowed the jury to find use of a deadly weapon by finding that the instrument was capable of producing serious bodily injury without more.

The court did not err in deleting the phrase "produce death" in

its definition of deadly weapon. The requested definition of deadly weapon was disjunctive. All the court did was adjust its charge to the evidence and circumstances of the case, which it should have done. *Crosby v. State*, 150 Ga. App. 555, 557 (2) (258 SE2d 264) (1979). Besides, it is common knowledge, and goes without saying, that a knife can be used to produce death. But one need not intend death in order to be convicted of aggravated assault.

4. Appellant also contends that the court's charge on serious injury and the definition of a deadly weapon, in combination, was incorrect, unclear, and confusing.

He argues that "[t]he effect of the charge was to equate deadly weapon with that weapon being able to inflict a serious injury and to eliminate in the jury's mind the need to find that the weapon must be deadly, likely to kill, as charged in the indictment." If this indeed was the effect of the charge we see no error. As we discussed in Division 4, the court's definition of deadly weapon conformed to the evidence and the theory of the case.

5. Next is the contention that the verdict was contrary to law because appellant "under the indictment as laid out could not have been convicted of aggravated assault by assaulting with an object likely to produce serious injury and as the jury was thus charged, the conviction cannot stand" because "[c]onviction upon a charge not made would be sheer denial of due process."

Defendant was charged with assault of the victim by cutting and stabbing him with a knife, the same being a deadly weapon. As we have discussed in Divisions 3 and 4, the court's charge on deadly weapon was an adequate statement of the law under the facts of the case. Defendant was convicted of precisely what he was indicted for.

6. Charging OCGA § 16-5-21, subsections (a) (1) and (2) in their entirety does not succumb to the argument that there was a problem because of an incomplete definition of deadly weapon.

The portion of the code section complained of, i.e., subsection (a) (2) was given to the jury as defendant requested in his submitted request to charge. He cannot now complain of it. *Williams v. State*, 255 Ga. 21, 23 (6) (334 SE2d 691) (1985).

7. Appellant claims that the court erred in charging the jury, "If you find the state has failed to rebut this affirmative defense beyond a reasonable doubt, then you *may* find the defendant not guilty." (Emphasis supplied.)

He argues that the use of "may" denied him due process under the federal constitution because it allowed the jury to convict in the face of legal justification.

While it is true that the court should have said "must" rather than "may," in determining the effect of an isolated excerpt of a charge we have to consider the court's charge as a whole. *Graham v.*

*State*, 175 Ga. App. 411, 414 (4) (333 SE2d 664) (1985). Later in the charge the court fully instructed the jury as to the burden of proof and the concept of legal justification as claimed by the defendant. The court specifically charged, "If from a consideration of the evidence or from a lack of evidence, you believe these contentions of the defendant to be the truth of the case, or if there rests upon your minds a reasonable doubt as to his guilt, it would be your duty to acquit the defendant. . . ." The charge as a whole fully and clearly explained the state's burden of proof and the jury's duty if the state failed to carry its burden. We find no reversible error in the court's misstatement as it is unlikely that the instructions considered as a whole would mislead a jury of ordinary intelligence. *Asbury v. State*, 175 Ga. App. 335, 337 (2) (333 SE2d 194) (1985).

8. Appellant asserts the court erred in not recharging the jury on justification or self-defense.

The jury requested further clarification between the offenses of simple battery and aggravated assault. Defendant requested that the court in answering the question address the issue of a deadly weapon, arguing that the court should repeat instructions favorable to the defense where the requested instructions taken alone might leave an erroneous impression in the minds of the jury. Discussion ended and the court read the jury the code sections for aggravated assault and simple battery.

It is not error to limit a recharge to the question asked. *Williams v. State*, 151 Ga. App. 765, 766 (1) (261 SE2d 487) (1979). See also *Dyer v. State*, 167 Ga. App. 310, 311 (3) (306 SE2d 313) (1983); *Brownlee v. State*, 155 Ga. App. 875, 876 (3) (273 SE2d 636) (1980). Nor has appellant shown how a repetition of these code sections taken alone would have left an erroneous impression in the jury's mind.

9. Appellant maintains that the court erred in sending a photocopy of the two recharged code sections, OCGA §§ 16-5-21 (a) and 16-5-23 (a), to the jury room following the recharge. He argues that this coupled with the failure to recharge on justification or to "correct" the definition of a deadly weapon had the effect of spotlighting "irrelevant" subject matter in the charge to his detriment.

As discussed in Division 8, the court's limiting of the recharge to the two code sections was not error. Furthermore, the code sections on aggravated assault and simple battery are not irrelevant as they constituted the gravamen of the criminal charge, and they were given precisely in answer to the jury's question. As for their being sent out in writing, defendant's counsel expressly stated and later affirmed that there was no objection to this method of responding to the jury's inquiry. After this method was followed, no objection was registered and in fact, counsel stated that the previously-stated position was

adopted. This, then, involves no reversible error. *Columbus v. State*, 151 Ga. App. 862, 863 (3) (261 SE2d 771) (1979). See also *Millsaps v. State*, 180 Ga. App. 509, 510 (351 SE2d 81) (1986); *Llewellyn v. State*, 241 Ga. 192, 194 (2) (243 SE2d 853) (1978).

10. The last enumeration is that the court erred in refusing to grant the motion for new trial as amended.

Most of the grounds in defendant's amended motion for new trial were separately enumerated as error and have been ruled on in previous divisions of this opinion. Any remaining grounds were not pursued on appeal, either by argument or citation of authority and therefore have been abandoned. Court of Appeals Rule 15 (c); *Ramsey v. State*, 183 Ga. App. 48, 51 (4) (357 SE2d 869) (1987).

*Judgment affirmed. McMurray, P. J., concurs. Sognier, J., concurs in the judgment only.*

DECIDED NOVEMBER 17, 1987 — 
REHEARING DENIED DECEMBER 3, 1987 — 

*Paul J. Stalcup*, for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, John M. Turner, Jr., Benjamin H. Oehlert III, Assistant District Attorneys*, for appellee.