S10A1322. LONG v. THE STATE.

(700 SE2d 399)

NAHMIAS, Justice.

Charles Long and Jamie Watkins were jointly tried for and convicted of numerous crimes committed against Dennis Banks and

Nathaniel Woodard.[1] We have already affirmed Watkins's convictions. See *Watkins v. State*, 285 Ga. 107 (674 SE2d 275) (2009). For the reasons that follow, we affirm Long's convictions in part, vacate his two aggravated assault convictions and sentences, and remand the case to the trial court for resentencing.

1. Viewed in the light most favorable to the verdict, the evidence at trial showed that the victims drove to an apartment complex with Frazier Todd, a friend of Long and Watkins, to buy some marijuana. Todd exited the victims' car, which was parked in the front of the complex, and walked to the back of the complex, where he spoke with Long and Watkins about selling marijuana to the victims. Long and Watkins, who both had handguns, then walked to the front of the complex and approached the victims while they were sitting in their car. Long approached Banks on the driver's side and Watkins approached Woodard on the passenger's side.

Woodard testified that Long asked if they were police officers and pulled out a gun. The victims said they were not police officers. Long began yelling at the victims to give them everything the victims had. Long then started hitting Banks in the head with his gun, and Banks began to cry and was "drenched in blood," which was "coming from everywhere all over his head." Watkins then started beating Woodard with his gun and broke a bone between Woodard's eyes. Watkins's gun fired while he was beating Woodard, and the bullet hit Banks in the head and killed him. Long and Watkins robbed the victims of their cell phones and wallets.

Long contends that his convictions on Counts 7 and 8 of the indictment, which charged him with aggravated assault of Banks and Woodard by striking them "on or about the head with a firearm,

---

[1] The crimes occurred on November 1, 2004. On May 20, 2005, Long and Watkins were jointly indicted as follows: Count 1 – malice murder of Banks; Count 2 – felony murder of Banks, with armed robbery as the underlying felony; Count 3 – felony murder of Banks, with aggravated assault as the underlying felony; Count 4 – armed robbery of Woodard; Count 5 – armed robbery of Banks; Count 6 – aggravated assault with a deadly weapon of Banks "by shooting him with a firearm, a deadly weapon"; Count 7 – aggravated assault with a deadly weapon of Banks "by striking him on or about the head with a firearm, a deadly weapon"; Count 8 – aggravated assault with a deadly weapon of Woodard "by striking him on or about the head with a firearm, a deadly weapon"; Count 9 – possession of a firearm during the commission of a felony; and Count 10 – possession of a firearm by a convicted felon (Long only; the State later dead docketed this charge). On August 25, 2006, the jury acquitted Long and Watkins of malice murder but found them guilty of the remaining crimes. The trial court sentenced Long and Watkins to life in prison for the felony murder (armed robbery) count; to 20 years each for the armed robbery of Woodard, the aggravated assault of Banks based on striking him in the head (Count 7), and the aggravated assault of Woodard (Count 8), all running consecutively to the life sentence; and to five consecutive years for possession of a firearm during the commission of a felony. The trial court merged the convictions on Counts 3, 5, and 6. The trial court denied Long's motion for new trial on November 20, 2009. Long's timely appeal was docketed in this Court for the April 2010 Term, and was submitted for decision on the briefs.

a deadly weapon," cannot stand, because there was insufficient evidence to show that the firearms were deadly weapons under the circumstances of this case. This contention, however, is moot, because we conclude in Division 2 below that these two convictions merged into Long's armed robbery convictions. See *Lupoe v. State*, 284 Ga. 576, 577, n. 2 (669 SE2d 133) (2008) (holding that a claim of insufficient evidence to support a conviction that has been merged into another conviction for sentencing purposes is moot).

As for Long's remaining convictions, viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find the defendant guilty beyond a reasonable doubt of those crimes. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

2. Long contends that his conviction on Count 7 (the aggravated assault on Banks by striking him with a gun) should have merged into the conviction on Count 5 (the armed robbery of Banks)[2] and that the conviction on Count 8 (the aggravated assault on Woodard by striking him with a gun) should have merged into the conviction on Count 4 (the armed robbery of Woodard). We agree.

To determine if the aggravated assaults were lesser included offenses of the armed robberies, we apply the "required evidence" test set forth in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006). Under that test, we examine "whether each offense requires proof of a fact which the other does not." *Lucky v. State*, 286 Ga. 478, 481 (689 SE2d 825) (2010). In *Lucky*, the defendant contended that his conviction for aggravated assault with intent to rob should merge into his armed robbery conviction. "Armed robbery (OCGA § 16-8-41) requires an intent to rob, the use of an offensive weapon, and the taking of property from the person or presence of another. Aggravated assault with intent to rob (OCGA § 16-5-21 (a)) requires an assault upon the victim, with the intent to rob." *Lucky*, 286 Ga. at 481. We concluded that armed robbery contained a requirement — the taking of property — that aggravated assault did not, but that aggravated assault with intent to rob did not require proof of a fact which armed robbery did not. See id. at 482. Both crimes required proof of an intent to rob, and the assault requirement of aggravated assault — that the defendant attempt to commit a violent injury to the victim or place the victim in reasonable apprehension of receiving a violent injury — was the

---

[2] The trial court merged the Count 5 armed robbery of Banks into the felony murder (armed robbery) conviction, but the same merger analysis applies in determining whether the Count 7 aggravated assault merged into either the armed robbery conviction or the felony murder predicated on that armed robbery. We will simply refer to armed robbery in the analysis below.

equivalent of the "use of an offensive weapon" requirement of armed robbery. See id. Thus, we held that "the aggravated assault with intent to rob merges into the armed robbery conviction." Id.

In this case, the aggravated assault with a deadly weapon, see OCGA § 16-5-21 (a) (2), also does not require proof of a fact that armed robbery does not. Because *Lucky* establishes that the assault requirement of aggravated assault is the equivalent of the "use of an offensive weapon" requirement of armed robbery, the controlling issue is whether the "deadly weapon" requirement of this form of aggravated assault is the equivalent of the "offensive weapon" requirement of armed robbery. We conclude that it is.

For purposes of armed robbery,

> "the term 'offensive weapon' includes not only weapons which are offensive per se, such as firearms loaded with live ammunition, but also embraces other instrumentalities not normally considered to be offensive weapons in and of themselves but which may be found by a jury to be likely to produce death or great bodily injury depending on the manner and means of their use."

*Phillips v. State*, 259 Ga. App. 331, 332 (577 SE2d 25) (2003) (quoting *Eady v. State*, 182 Ga. App. 293, 295 (355 SE2d 778) (1987)). Similarly, with regard to the "deadly weapon" requirement for aggravated assault, our appellate courts have held that a weapon that may be found by a jury to produce death or great bodily injury based on its use in a particular case constitutes a deadly weapon. See *Skaggs v. State*, 278 Ga. 19, 20-21 (596 SE2d 159) (2004) (holding that fists and feet were deadly weapons because they were, under the circumstances of the case, capable of producing serious bodily injury or death); *Johnson v. State*, 185 Ga. App. 167, 169-170 (363 SE2d 773) (1987) (holding that it is appropriate to charge that a deadly weapon is one capable of inflicting great bodily injury).

We therefore conclude that there is no element of aggravated assault with a deadly weapon that is not contained in armed robbery and that Long's aggravated assault convictions merged into his armed robbery convictions. Those convictions and the sentences entered for them must therefore be vacated and the case remanded to the trial court for resentencing.[3] This holding also moots Long's contention regarding the trial court's jury charge on aggravated assault. See *Vergara v. State*, 287 Ga. 194, 196 (695 SE2d 215) (2010)

---

[3] We note that Long's co-defendant did not raise this merger issue in his appeal. See *Watkins*, 285 Ga. 107.

(holding that a contention regarding an erroneous jury charge on a conviction that has been merged into another conviction for sentencing purposes is moot).

3. Long contends that the trial court erred in failing to grant his motion to sever his trial from Watkins's trial. To prevail on this claim, however, Long must demonstrate, among other things, that a joint trial prejudiced his defense and resulted in a denial of due process. See *Krause v. State*, 286 Ga. 745, 749 (691 SE2d 211) (2010). Long contends that he was prejudiced because he could not call Watkins as a witness at the joint trial. However, Long's assertion that he could have called his co-defendant as a witness at a separate trial, without Watkins's invoking his right against self-incrimination, was mere speculation, and Long also failed to show that Watkins's testimony would have been favorable to him. Long therefore failed to carry his burden to show the required prejudice. See *Owen v. State*, 266 Ga. 312, 314 (467 SE2d 325) (1996) (holding that Owen failed to show prejudice from the denial of her motion to sever, because she "made no showing that her co-defendants would be more likely to testify if they were tried separately; nor did she show that her co-defendants' testimony would tend to exculpate her").

4. Long contends that the trial court erred in rejecting his claim of ineffective assistance of trial counsel. We disagree.

When Long was arrested, he gave a statement to Detective Wilson. The detective testified at trial that Long was "advised of his rights" before he made the statement, but the detective was not asked by either party to explain what that entailed, that is, the specific rights of which he advised Long. Detective Wilson then testified that Long had admitted that he was at the scene and approached the victims' vehicle on the driver's side. During closing argument, Long's counsel told the jurors that the trial court would instruct them not to consider Long's statement to Detective Wilson unless they found that Long was "given his *Miranda* warnings" and knowingly and voluntarily waived them. Counsel then argued that there was no testimony that Long was "given his *Miranda* warnings" and that the jurors therefore could not consider Long's statement. In his closing, the prosecutor responded by stating: "You know what *Miranda* rights are — you've heard it a hundred thousand times on television. . . . The suggestion from Mr. Long's counsel that that was not done . . . is totally inaccurate. [Detective Wilson] said [Long] agreed to give a statement and that he read him his *Miranda* rights."

Long argues that his trial counsel was ineffective in failing to object to the prosecutor's reference to television, because the State is not permitted to forego its burden of producing evidence and

witnesses by allowing jurors to substitute their own understanding based on television viewing. At the motion for new trial hearing, trial counsel explained that she did not object because she does not object to closing arguments unless an argument is so objectionable that it would warrant a mistrial, that she thought the trial court would say that "closing argument is just argument," that she knew the court would instruct the jury on the law relating to *Miranda* warnings, that she had a strong argument for why the jury should conclude that *Miranda* warnings had not been given, and that she thought the prosecutor's response was weak.

To prevail on his ineffective assistance claim, Long must show that his trial counsel provided deficient performance and that, but for that unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SC 2052, 80 LE2d 674) (1984). In examining an ineffectiveness claim, a court need not "address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697.

Here, even assuming that trial counsel performed deficiently in failing to object to the prosecutor's argument, despite her explanation of her strategy, Long has failed to carry his burden to show prejudice. The trial court instructed the jury that closing arguments were not evidence and that it was the jury's responsibility to decide the case based on the evidence introduced in court, which would exclude what the jury might have heard on television. In addition, the other evidence against Long was strong, including the testimony of two witnesses (one of them Long's then girlfriend) present at the apartment complex regarding Long's involvement in the crimes. Thus, even if Long's counsel had objected to the argument and the trial court had sustained the objection and instructed the jurors specifically not to rely on what they had heard on television, there is no reasonable probability that the result of the trial would have been different. Accordingly, we conclude that Long's ineffective assistance claim is without merit.

*Judgment affirmed in part, vacated in part, and case remanded for resentencing. All the Justices concur.*

DECIDED OCTOBER 4, 2010.

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Elizabeth A. Baker, Assistant District Attorneys, Thurbert E. Baker,*

*Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.