**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**May 29, 2013**

# In the Court of Appeals of Georgia

A13A0556. HAYNES v. THE STATE.

BARNES, Presiding Judge.

A jury found Darius Darnell Haynes guilty of armed robbery, aggravated assault, burglary, and possession of a firearm during the commission of a felony based on his participation in a home invasion. The trial court denied Haynes's motion for new trial. On appeal, Haynes contends that there was insufficient evidence to convict him of aggravated assault and that the trial court erred in failing to merge his aggravated assault conviction into his armed robbery conviction for purposes of sentencing. For the reasons set forth below, we agree with Haynes that the trial court erred with respect to merger, and for that reason, we must vacate his conviction and sentence for aggravated assault and remand for resentencing. We otherwise affirm.

Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to the jury's verdict. *Braham v. State*, 260 Ga. App. 533 (580 SE2d 256) (2003). So viewed, the evidence showed that on the evening of January 7, 2010, a husband and wife were at home with their three children. A tenant rented a room in the basement of the home but he was not there that evening.

Responding to a knock at the front door, the husband was confronted by two men holding handguns. The first gunman wore a baseball cap with a hoodie pulled over it, while the second gunman had on a baseball cap, a hoodie, and a piece of clothing covering his face. The two gunmen forced their way through the doorway and into the living room. During the course of the home invasion, they repeatedly demanded money and demanded to know the whereabouts of the tenant who lived in the basement.

The husband began wrestling with the first gunmen while his wife ran down the hall in an effort to find her cell phone and call for help. The second gunman then hit the husband in the head with his gun and ran down the hall in pursuit of the wife. After getting hit with the gun, and after the first gunman threatened to have his partner shoot the wife and children if the husband continued to fight, the husband

2

stopped wrestling with the gunman. The husband stood in front of his children in an effort to shield them from harm as the first gunman held them at gunpoint. During the fight with the husband, the hoodie had slipped off of the first gunman's head, and the husband could now get "a clear look at [the gunman's] face" as he was pointing the gun at the husband.

When the wife was unable to find her cell phone, she barricaded herself in the master bathroom. The second gunman who had pursued her down the hall began banging on the bathroom door, and the wife opened the door out of fear that he would start shooting. The second gunman forced her to walk back down the hall into the living room at gunpoint, where she was ordered to lie down on the floor. The wife was able to clearly see the face of the first gunman, who was pointing a gun at her husband, as she was forced into the living room and onto the floor at gunpoint.

After forcing the wife back into the living room, the second gunman ran downstairs to the basement and began ransacking it. While the second gunman was ransacking the basement, the first gunman held the family at gunpoint in the living room, continuing to ask "where the money was" and "where [the tenant] was," and the family repeatedly responded that they "didn't know." The husband implored the first gunman not to hurt them and for he and his partner to take whatever they wanted

3

from the house. Unable to find the tenant or any money, the gunmen eventually grabbed electronics off of a computer table and fled from the house.

Detectives identified Haynes as a potential suspect because he had previously been involved in a heated dispute over money with the tenant who lived in the basement of the family's home. A detective prepared separate photographic lineups, each of which included a picture of Haynes,[1] for the husband, wife, and their fourteen-year-old and six-year-old daughters to view individually.[2] The fourteen-year-old daughter was unable to identify anyone in the photographic lineup, but the husband, wife, and their six-year-old daughter identified Haynes as the first gunman.

Haynes was indicted and tried before a jury on charges of armed robbery, aggravated assault, burglary, and possession of a firearm during the commission of a felony.[3] The husband, wife, and their two daughters testified at trial about the home

---

[1] The four photographic lineups prepared by the detective had pictures of the same six individuals (including Haynes), but the pictures were assigned a different order in each lineup.

[2] The couple's son was one year old at the time of the home invasion.

[3] Detectives ultimately identified the second gunman, who had his face covered during the home invasion. The charges relating to the home invasion brought against the second gunman were nolle prossed as part of a plea deal under which the gunman pled guilty to other unrelated crimes.

invasion and the photographic lineups that they viewed, and the husband and wife positively identified Haynes in the courtroom as the first gunman. The tenant testified regarding his dispute with Haynes over money, and the detectives involved in the case also testified on behalf of the State. In contrast, Haynes testified that he was not involved in the home invasion and presented several defense witnesses in an effort to establish that he had an alibi and had been erroneously identified by the family as one of the gunmen. After hearing the conflicting testimony, the jury found Haynes guilty of the charged offenses.

1. Haynes contends that there was insufficient evidence to convict him of aggravated assault, but his contention is moot because we conclude in Division 2 below that his aggravated assault conviction merged into his armed robbery conviction for sentencing purposes. See *Long v. State*, 287 Ga. 886, 887-888 (1) (700 SE2d 399) (2010). With regard to Haynes's remaining convictions, the evidence presented at trial and summarized above, construed in the light most favorable to the verdict, was sufficient to authorize a rational jury to find him guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). We therefore affirm his convictions on those counts.

2. Haynes contends that the trial court erred in failing to merge his aggravated assault conviction into his armed robbery conviction for purposes of sentencing. The indictment alleged that Haynes committed the offense of armed robbery under OCGA § 16-8-41 (a) in that, with the intent to commit a theft, he took certain electronic equipment from the immediate presence of the husband and wife "by use of an offensive weapon, to wit: a handgun." The indictment further alleged that Haynes committed the offense of aggravated assault under OCGA § 16-5-21 (a) (2) in that he assaulted the husband "with an object, to wit: a handgun, which, when used offensively against another person is likely to result in serious bodily injury, by striking [him] in the back of the head with the handgun." According to Haynes, the aggravated assault was a lesser included offense of the armed robbery, requiring merger. We agree.

"Whether offenses merge is a legal question, which we review de novo." *McGlasker v. State*, __ Ga. App. __ (2) (__ SE2d __) (2013 Ga. App. LEXIS 351) (Case No. A12A2079, decided April 12, 2013).

> It is axiomatic that Georgia law bars conviction for a crime that arises from the same criminal conduct included as a matter of fact or as a matter of law in another crime for which the defendant has been convicted. To determine if an aggravated assault with a deadly or

6

offensive weapon, indicted under OCGA § 16-5-21 (a) (2), is a lesser included offense of armed robbery, we apply the "required evidence" test set forth in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006). *Long*[, 287 Ga. at 888 (2)]. Under that test, the important question is . . . whether, looking at the evidence required to prove each crime, one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the other crime charged. In *Long*, the Supreme Court of Georgia concluded that there is no element of aggravated assault with a deadly or offensive weapon, OCGA § 16-5-21 (a) (2), that is not contained in armed robbery, OCGA § 16-8-41 (a). Consequently, convictions for both offenses will merge – but only if the crimes are part of the same act or transaction.

(Citations and punctuation omitted.) *Crowley v. State*, 315 Ga. App. 755, 759 (3) (728 SE2d 282) (2012). See OCGA § 16-1-6 (1); *Long*, 287 Ga. at 888-890 (2); *McGlasker*, __ Ga. App. at __ (2); *Hall v. State*, 313 Ga. App. 66, 67-69 (720 SE2d 181) (2011).

To determine if the striking of the husband with the handgun, which formed the basis for the aggravated assault conviction, was a separate act or transaction from the armed robbery, "we must inquire when the robbery began and when it concluded." *McGlasker*, __ Ga. App. at __ (2). If the underlying facts show that the aggravated assault was completed prior to the armed robbery, or vice versa, there is no merger.

See *Brown v. State*, 314 Ga. App. 198, 205-206 (6) (723 SE2d 520) (2012) (aggravated assault based on striking of victim with gun did not merge into armed robbery conviction, where armed robbery was complete before aggravated assault occurred); *Ransom v. State*, 298 Ga. App. 360, 361-362 (1) (680 SE2d 200) (2009) (aggravated assault based on pointing gun at victim did not merge into armed robbery conviction, where aggravated assault was complete before armed robbery occurred).

Here, the husband and wife testified that in addition to demanding to know the whereabouts of the tenant who lived in the basement, the gunmen repeatedly demanded to know "where the money was" during the home invasion, and the husband was struck in the head with the handgun as the gunmen were attempting to subdue the family so that the money and tenant could be located in the home, and before any of the family's property had been taken. Under these circumstances, the striking of the husband with the handgun and the commission of the armed robbery were not separate and distinct acts committed in sequential order but rather were "one uninterrupted criminal transaction." *Crowley*, 315 Ga. App. at 760 (3). For this reason, the aggravated assault conviction merged into the armed robbery conviction.[4]

---

[4] We note that neither battery nor aggravated battery was charged in this case. See *Bradley v. State*, ___ Ga. ___, ___ (___ SE2d ___) (2013 Ga. LEXIS 259) (Case No. S12A1857, decided March 18, 2013) (Hunstein, C.J., concurring) ("Prosecutors

8

See *Long*, 287 Ga. at 888-890 (2) (aggravated assault for striking victim with gun merged with armed robbery conviction); *McGlasker*, __ Ga. App. at __ (2) (aggravated assault predicated on pistol-whipping of victim during course of armed robbery merged with armed robbery conviction); *Garland v. State*, 311 Ga. App. 7, 12-13 (3) (714 SE2d 707) (2011) (aggravated assault for striking homeowner in head with gun merged with attempted armed robbery conviction).[5]

The State, however, attempts to differentiate between the gunmen's search for money in the home and their subsequent taking of the electronics when no money could be found. The State suggests that the gunmen's efforts to subdue the family and hold them at gunpoint so that they could search for money in the home was a separate act or transaction from the ultimate taking of the electronics. We are unpersuaded.

---

seeking to avoid this incongruity in similar circumstances might be wise to seek indictment on aggravated battery, as an alternative to aggravated assault."). See also *McGlasker*, __ Ga. App. at __ (2) (noting that "[n]either species of battery was charged" in the case).

[5] The State's reliance on *Bunkley v. State*, 278 Ga. App. 450, 455-456 (2) (629 SE2d 112) (2006) is misplaced because that case was decided a few months before our Supreme Court's decision in *Drinkard*, which disapproved the "actual evidence" test and adopted the "required evidence" test in its stead for determining when one offense is included in another under OCGA § 16-1-6 (1).

We rejected a similar argument in *Hall*, 313 Ga. App. at 68-69, where the State attempted to differentiate Hall's holding of one victim at gunpoint in an effort to find valuable musical equipment that Hall thought was located in the victims' apartment, from Hall's ultimate decision to take an Xbox console after failing to locate the musical equipment. Concluding that Hall's aggravated assault and armed robbery convictions merged, we explained that

> [t]he State's argument that Hall's taking of the Xbox console was an "afterthought" in no way changes this result. Indeed, it is not determinative under the merger analysis . . . that the desired object of Hall's armed robbery was something other than that which he actually took. Instead, what dictates merger is the fact that both crimes for which Hall was convicted were predicated upon the same conduct – namely, Hall's use of the handgun to overpower and intimidate [one of the victims] for the purpose of robbing the victims of their belongings.

Id. at 69.

Similar to *Hall*, the aggravated assault and armed robbery in the present case were predicated on the same conduct – the gunman's use of the handgun to overpower and intimidate the husband for the purpose of robbing the family of their belongings. Thus, contrary to the State's argument, the aggravated assault conviction merged into the armed robbery conviction, Haynes's conviction and sentence for

aggravated assault must be vacated, and the case must be remanded to the trial court for resentencing. See generally *Sears v. State*, 292 Ga. 64, 73-74 (6) (734 SE2d 345) (2012).

*Judgment affirmed in part, vacated in part, and case remanded for resentencing. Miller and Ray, JJ., concur.*