**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 21, 2017**

# In the Court of Appeals of Georgia

A17A0712. SIMMONS v. THE STATE.

BETHEL, Judge.

Ivory Joseph Simmons appeals from the denial of his motion for a new trial following his conviction on one count of aggravated assault and one count of criminal attempt to commit armed robbery. On appeal, he enumerates several errors. First, he argues that the evidence presented by the State on both counts was insufficient to support a verdict of guilt beyond a reasonable doubt. Second, he argues that his trial counsel was ineffective by failing to object to certain evidence identifying Simmons as the assailant and by not objecting to the admission of records of a prior conviction for purposes of sentencing. Third, he argues that the trial court's instructions to the jury regarding the elements of simple assault were erroneous because they were not tailored to the indictment and the evidence presented by the State. Finally, he argues

that the trial court erred by not merging his convictions for aggravated assault and attempted armed robbery for the purposes of sentencing. Because Simmons' first three enumerations are without merit, we affirm his convictions. However, because the trial court erred by not merging his convictions for purposes of sentencing, we vacate his sentence and remand this case to the trial court for further proceedings consistent with this opinion.

On appeal, the defendant "is no longer presumed innocent and all of the evidence is to be viewed in the light most favorable to the jury verdict." *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014) (citation omitted). So viewed, the evidence shows that one evening a man (the "Victim") delivered a pizza to an apartment unit. After handing the pizza to the customer, receiving payment in cash, and turning to walk back to his car, the Victim was suddenly attacked from behind.

His assailant, later identified as Simmons, attempted to strike him on the side of the head with a metal automotive water pump. Simmons failed to land the blow directly, instead hitting the Victim in the mouth with his arm. Upon receiving this blow to his face, the Victim heard a loud metal clang but did not see if Simmons had anything in his hand. The Victim reacted to this blow, and commenced a struggle with Simmons, which resulted in both men falling to the ground. The Victim was able to

2

pin Simmons to the ground, and he began calling out for help. Throughout this encounter, the Victim never heard Simmons make any demand for money. Simmons eventually worked himself free from the Victim and fled the scene.

As part of the struggle, the Victim sustained cuts to his lips, which he indicated were the result of Simmons' hitting him in the face with his arm. The Victim later recalled seeing a water pump on the ground after his struggle with Simmons. As part of their investigation, police collected a metal water pump approximately eleven inches in length from the scene of the incident.

Simmons was arrested later in the evening and was charged with one count of aggravated assault and one count of attempted armed robbery. While in custody that night, police brought Simmons to the pizzeria where the Victim worked and asked the Victim if Simmons was the person who attacked him. At that time, the Victim positively identified Simmons. The Victim and the arresting officer described this identification to the jury as part of their respective trial testimony, and the Victim also identified Simmons in court. Simmons made no objection to any of these identifications. A second witness for the State, a neighbor who lived across the street from where the incident occurred, also identified Simmons as the assailant. During

their trial testimony, both the Victim and the neighbor identified the water pump that was recovered from the scene of the incident.

At the close of the State's case, Simmons moved for a directed verdict of acquittal on the attempted armed robbery charge. The trial court denied this motion, and, thereafter, Simmons elected not to testify or call any witnesses. After deliberation, the jury found Simmons guilty on one count each of attempted armed robbery and aggravated assault. Simmons' counsel did not request that the offenses be merged for purposes of sentencing, and the trial court issued twenty-year sentences for each offense and set those sentences to run consecutively. Simmons later moved for a new trial, which the court denied following a hearing. This appeal followed.

1. Simmons first challenges the sufficiency of the evidence on both counts of the indictment. Following a conviction in a criminal case, our review is limited to a determination of whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find beyond a reasonable doubt that the defendant committed the essential elements of the crime. *Gray v. State*, 213 Ga. App. 507, 509 (1) (445 SE2d 328) (1994).

(a) OCGA § 16-8-41 (a) provides, in part, that "[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of

4

another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-4-1 provides that "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."

Here, the evidence was sufficient to permit the jury to find Simmons guilty of attempted armed robbery beyond a reasonable doubt. Although Simmons did not verbally demand, or ultimately steal, any property from the Victim, the jury could infer his intention to do so because the record reflects that he approached the Victim from behind and struck him after the Victim had received cash in payment for the pizza he had just delivered.[1] Likewise, because the Victim was still holding the money he had received from the customer as he completed his delivery, this evidence satisfied the requirement that the attempted robbery must be with respect to property

---

[1] We emphasize that the State need not necessarily prove that the defendant declared an intention to rob the victim in order to satisfy this requirement. Rather, as this Court has previously noted, "[t]he intention may be gathered from the circumstances of the case as proved. In seeking the motives of human conduct, inferences and deductions may properly be considered where they flow naturally from the facts proved." *Hambrick v. State*, 174 Ga. App. 444, 446 (1) (330 SE2d 383) (1985) (upholding denial of motion for directed verdict of acquittal on armed robbery charge where defendant pulled container holding cash from victim).

5

in the person's immediate presence. *See Patterson v. State*, 312 Ga. App. 793, 797 (3) (720 SE2d 278) (2011) (immediate presence requirement satisfied if property was under victim's control or responsibility).

Finally, evidence that Simmons swung a metal water pump at the Victim satisfied the requirement that the robbery be attempted with "an offensive weapon, or any replica, article, or device having the appearance of such weapon." Although an automotive water pump is not commonly utilized as an offensive weapon, it is not necessary to show that the instrumentality used to carry out (or, in this case, attempt to carry out) the charged offense is a standard weapon. As the Georgia Supreme Court has discussed,

> [f]or purposes of armed robbery, the term 'offensive weapon' includes not only weapons which are offensive per se, such as firearms loaded with live ammunition, but also embraces other instrumentalities not normally considered to be offensive weapons in and of themselves but which may be found by a jury to be likely to produce death or great bodily injury depending on the manner and means of their use.

*Long v. State*, 287 Ga. 886, 889 (2) (700 SE2d 399) (2010) (citation and punctuation omitted). In this case, the evidence established that Simmons used the metal water pump, roughly eleven inches in length, in an attempt to hit the Victim on the head.

Although Simmons did not land this blow, instead hitting the Victim across his mouth with his arm, we are satisfied that the evidence establishes that Simmons' offensive use of the metal water pump could have inflicted a serious injury upon the Victim. *See Chitwood v. State*, 170 Ga. App. 599, 600 (1) (317 SE2d 589) (1984) (evidence sufficient where defendants used metal table leg to strike victim in order to effectuate robbery).

Because the attack was launched from behind him, and because the water pump never appears to have made contact with the Victim, it was not immediately clear to the Victim that Simmons had attempted to hit him with the water pump. However, other testimony, including the testimony of the neighbor who witnessed the attack, established its use by Simmons. The Victim also testified to hearing a "loud metal clang" and seeing the water pump on the ground after his struggle with Simmons. As we noted in *Johnson v. State*,[2] "circumstantial evidence is sufficient to establish the use of a . . . device appearing to be a weapon, and a conviction for armed robbery may be sustained even though the . . . article used was neither seen nor accurately described by the victim." The armed robbery statute requires only "some physical manifestation of a weapon or some evidence from which the presence of a weapon

---

[2] 331 Ga. App. 134, 135-36 (1) (770 SE2d 236) (2015) (citation omitted).

7

may be inferred." *Id*. at 136 (1). The evidence presented here satisfies this requirement.

Because the State presented evidence satisfying each element of the offense, we find that there was sufficient evidence to support Simmons' conviction for attempted armed robbery beyond a reasonable doubt.

(b) OCGA § 16-5-21 (a) provides, in part, that "a person commits the offense of aggravated assault when he or she assaults: . . . (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" An assault occurs when a person "[a]ttempts to commit a violent injury to the person of another [or c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (1), (2).

Here, the evidence presented by the State was clearly sufficient to allow a jury to find that Simmons committed this offense beyond a reasonable doubt under both theories of assault. Simmons' act of approaching the Victim from behind, taking him by surprise, and attempting to hit him on the head with a metal object could allow the jury to infer Simmons' intention to violently injure the Victim. *See Maynor v. State*, 257 Ga. App. 151, 153 (570 SE2d 428) (2002) ("[A]ggravated assault with a deadly

8

weapon which is likely to result in serious bodily injury does not require a specific criminal intent; rather, it requires only a general criminal intent . . . which . . . is a general intent to injure.").

The evidence also established that Simmons placed the Victim in reasonable apprehension that he was about to suffer a violent injury. At trial, the Victim testified that he feared for his life and safety when he was attacked by Simmons. The Victim also testified that he continued to struggle with Simmons because

> [I]t was just a matter of defending myself . . . he had jumped me out of the blue like that, you don't know if your life is in danger or not, so I just–my survival instincts had kicked in and I kind of pinned him to the ground where he couldn't assault me anymore.

The Victim's testimony provided direct evidence that he was placed in apprehension by Simmons' attack upon him. Moreover, evidence that, when faced with an attack, the victim confronted and fought the assailant is sufficient for a jury to conclude that the victim was placed in apprehension of receiving an injury. *See Williams v. State*, 299 Ga. App. 345, 347 (682 SE2d 586) (2009). The evidence thus satisfies the necessary elements under both theories of assault.

Additionally, evidence that Simmons attempted to use a metal water pump to hit the Victim on the back of the head satisfies the requirement in the aggravated

9

assault statute that he carry out the assault by using a device capable of inflicting a serious bodily injury. *See Massey v. State*, 278 Ga. App. 303, 303-04 (1) (628 SE2d 706) (2006) (weapon requirement satisfied when defendant struck victim with handle of a metal broom); *see also Long*, 287 Ga. at 889 (2) (holding that same object can satisfy "offensive weapon" requirement in armed robbery statute and "deadly weapon" requirement in aggravated assault statute). We thus find sufficient evidence in the record to support Simmons' conviction for aggravated assault.

2. Simmons next argues that his trial counsel was ineffective both in the conduct of the trial and in the sentencing proceedings that followed.

(a) Simmons first argues that his trial counsel was ineffective due to his failure to object to an impermissibly suggestive out-of-court identification of Simmons (commonly referred to as a "show up") as well as a later in-court identification based on the show up.

At trial, the State introduced evidence that, in the hours following the incident, the police placed Simmons into custody and brought him to the Victim's place of work so that the Victim could identify Simmons. Simmons did not object at trial to testimony by the Victim and the arresting officer regarding this show up.

10

Testimony from Simmons' trial counsel at the hearing on his motion for a new trial indicates that counsel consciously decided not to object to this particular identification. As Simmons' trial counsel indicated, she had already objected to a previous identification of Simmons by the Victim in an earlier line of questioning. As Simmons' counsel elaborated, "We had objected at that point to the ID. And I felt like to object again on the second point . . . would be bringing this . . . in front of the jury and calling more attention to it." Regarding her failure to object to another identification, Simmons' counsel offered a similar response: "We did not want to . . . point out to the jury that there were several, numerous [identifications] of him and they were done by various persons. And we didn't want to highlight that anymore than it already was."

Another member of Simmons' trial defense team reiterated this point in his testimony, noting that the overall strategy was not to contest before the jury that Simmons had attacked the Victim. Instead, the defense planned to argue that Simmons' attack was not for the purpose of robbing the Victim and that it did not involve the use of the water pump. The record shows that, in both their opening statements and closing arguments at trial, Simmons' counsel made this argument explicitly to the jury.

11

As the Georgia Supreme Court discussed in *McNair v. State*,[3] "[t]rial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." In this case, because there were positive identifications of Simmons made by multiple witnesses, a reasonable attorney in the position of Simmons' counsel could determine that objecting to the identifications in front of the jury would have the undesired effect of emphasizing the cumulative nature of this evidence. As the defense's overall strategy was predicated on undermining the State's theory of Simmons' motive and casting doubt on the evidence of his use of the water pump (and, critically, not on contesting Simmons' involvement in the incident), we cannot say that "trial counsel's decision not to object to this testimony was patently unreasonable and a decision that no competent attorney would have made." *Id*. at 184 (2) (b). This enumeration is therefore without merit.

(b) Simmons next suggests that his trial counsel was deficient because he did not object during sentencing to the admission of a document purporting to reflect Simmons' 1991 conviction in the State of New York. Simmons suggests he was prejudiced by this error because the document in the record of the sentencing

---

[3] 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014) (citation omitted).

12

proceedings does not contain information about the charge or the sentence imposed on him in New York. Simmons argues that the State's entry of an incomplete record of the New York conviction for purposes of sentencing led the judge to improperly consider evidence in aggravation that Simmons had previously committed a sex crime against a minor. We find no error here.

First, the record of the sentencing proceedings clearly indicates that Simmons' counsel objected to the admission of these records because, in his counsel's words "they are so old they really have no bearing on the case." The documents were admitted over this objection.

Moreover, the document that appears in the record of the sentencing hearing appears to be the first page of a record from criminal proceedings involving Simmons in Wayne County, New York. A longer version of this document appears elsewhere in the record and includes the grand jury's indictment of Simmons. That document identifies the specific New York penal code sections under which Simmons was charged and a summary of his conviction and sentence. The contents of these documents are consistent with the State's characterization of Simmons' New York conviction during the sentencing proceedings, and testimony by Simmons' trial counsel suggests that the omission of the full version of the document from the record

13

of the sentencing hearing was either an oversight in perfecting the initial record or the result of a stipulation between the State and Simmons. In any event, Simmons' trial counsel stated that, prior to sentencing, he had "viewed the certified copies and they do appear to meet the standards that Georgia deems acceptable." Because Simmons has thus failed to show that his counsel or the court lacked access to the full contents of the record of his New York conviction prior to his sentencing, he has not shown how he was prejudiced by this omission in the record of his sentencing hearing. We thus find no error here.

3. Simmons next argues that the trial court erred by giving an improper instruction to the jury regarding simple assault as an underlying element of aggravated assault. We review the jury instructions at issue in this case for plain error, as Simmons did not object below. *See Henderson v. State*, 333 Ga. App. 759, 760 (1) (777 SE2d 48) (2015) (citing OCGA § 17–8–58 (b) and noting that the failure to object regarding a jury instruction at trial precludes appellate review unless "the jury charge constitutes plain error which affects substantial rights of the parties").

As noted in Division 1 (b), *supra*, an underlying simple assault is an element of the offense of aggravated assault. *See Zamudio v. State*, 332 Ga. App. 37, 47 (6) (771 SE2d 733) (2015). A simple assault can occur in two ways: the assailant can

14

attempt to commit a violent injury to the person of another or the assailant can commit an act which places another person in reasonable apprehension of immediately receiving a violent injury. OCGA § 16-5-20 (a) (1), (2). These theories are distinct, but they are not mutually exclusive. *See Adams v. State*, 293 Ga. App. 377, 378-80 (1) (667 SE2d 186) (2008) (same act by defendant can satisfy both theories of assault).

Here, Simmons claims that the language of the indictment in the aggravated assault charge indicates that the State would be pursuing only the theory that Simmons attempted to commit a violent injury to the Victim, not that he placed the Victim in apprehension of danger. Simmons' argument is unpersuasive.

The indictment count charging Simmons with aggravated assault provides, in relevant part, that "[Simmons made] an assault on the person of [the Victim], with a water pump, an object which, when used offensively against a person, is likely to or actually does result in serious bodily injury . . ." The language in this count tracked, without omission, the language set forth in OCGA § 16-5-21 (a) (2). It therefore placed Simmons on notice that the State was not pursuing the alternate theories of

15

aggravated assault set forth in OCGA § 16-5-21 (a) (1) and (3).[4] Thus, the language in the indictment limited only the theory on which the *aggravated assault* was based, rather than the theory of the underlying simple assault. Moreover, "[t]he indictment did not and need not specify the manner in which the defendant committed the simple assault, when that is a lesser included offense within the greater offense of aggravated assault." *Hollins v. State*, 340 Ga. App. 190, 193 (796 SE2d 901) (2017) (per curiam). Therefore, the trial court was not required to constrain the jury instruction on simple assault in the manner Simmons suggests. *Simpson v. State*, 277 Ga. 356, 358 (3) (589 SE2d 90) (2003); *Hollins*, 340 Ga. App. at 193-94.

Simmons also argues that the judge's charge was not tailored to the evidence that was presented by the State. We also disagree with this contention, as the State presented evidence that established both theories of simple assault. *See* Division 1 (b), *supra*. Therefore, because the instruction provided by the judge regarding simple assault conformed to the language of the indictment and the evidence presented by the State, we find this enumeration to be without merit.[5]

---

[4] Distinctions between the three theories of aggravated assault were explicitly discussed at the charge conference following the close of the State's case.

[5] As we find no error in the trial court's instruction regarding simple assault, we need not reach Simmons' enumeration suggesting that his trial counsel was

16

4. Finally, Simmons argues that the trial court erred by not merging his convictions for attempted armed robbery and aggravated assault for purposes of sentencing. We agree.

"Whether two offenses should be merged is a question of law, and we apply a plain legal error standard of review." *Herrera v. State*, 306 Ga. App. 432, 434 (3) (702 SE2d 731) (2010) (citation and punctuation omitted). As this Court ruled in *Mullis v. State*,[6] convictions for attempted armed robbery and aggravated assault merge when the two charges arise out of the same act or transaction. Despite the State's contention, here the aggravated assault and the attempted armed robbery cannot reasonably be characterized as separate acts, as the evidence presented by the State established that Simmons only made a single attempt to hit the Victim with the water pump and that he did so with the intent to both rob and injure the Victim. *See* Division 1, *supra*; *see also Curtis v. State*, 330 Ga. App. 839, 846 (2) (769 SE2d 580) (2015) (armed robbery and aggravated assault offenses merge when they occur at the same place and approximately the same time). Due to the struggle that ensued immediately between the Victim and Simmons, it does not appear that Simmons had

_____

ineffective for failing to object to this jury charge.

[6] 321 Ga. App. 720, 721-22 (742 SE2d 750) (2013).

an opportunity to take any additional action against the Victim that might constitute a separate offense. *Cf. Gaither v. Cannida*, 258 Ga. 557, 557-58 (1) (372 SE2d 429) (1988) (merger of offenses is improper where evidence shows defendant took "repeated, substantial steps" toward committing armed robbery before committing a second act that constituted the aggravated assault). Thus, we agree with Simmons that these two offenses should have been merged by the trial court for purposes of sentencing. Simmons' sentence is therefore vacated, and his case is remanded to the trial court for re-sentencing.[7] *Mullis*, 321 Ga. App. at 721-22.

*Judgment of conviction affirmed, sentence vacated, and case remanded. McFadden, P. J., and Branch, J., concur*.

---

[7] Because we have found error in regard to the trial court's failure to merge the convictions for attempted armed robbery and aggravated assault, we need not reach Simmons' argument that his trial counsel was ineffective by failing to raise the merger issue with the trial court during sentencing.