**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 1, 2014**

# In the Court of Appeals of Georgia

A14A0617. POLANCO v. THE STATE.

MILLER, Judge.

Following a jury trial, Pablo Polanco was convicted of four counts of armed robbery (OCGA § 16-8-41 (a)), four counts of aggravated assault (OCGA § 16-5-21), four counts of false imprisonment (OCGA § 16-5-41), theft by taking (OCGA § 16-8-2), and possession of a firearm or knife during the commission of a felony (OCGA § 16-11-106). Polanco appeals from the denial of his motion for a new trial, contending that: (1) the trial court erred in failing to merge his aggravated assault convictions into his armed robbery convictions; (2) the trial court erred in refusing to allow him to identify jurors who would have been unfairly prejudiced by the large number of counts in the indictment; and (3) trial counsel rendered ineffective

assistance. For the reason that follow, we affirm in part, reverse in part, and remand for resentencing.

Viewed in the light most favorable to Polanco's convictions,[1] the evidence shows that the victims Rafael, Raul, Rigoberto, Rodrigo, and Jesus all lived in a house on Doyle Street in Tucker, Georgia, which is located in Gwinnett County. Around 10:00 p.m. on the night of February 12, 2010, Polanco went over to the victims' house with several others—Rosa, Braen, Mendy, Frank, Yuri and a juvenile. The juvenile and Yuri rode with Rosa in her Lexus. Polanco, Mendy and Frank rode with Braen in his gray Mercedes. The driver of the Mercedes parked in the victims' driveway, while Rosa dropped off her passengers and left.

Frank, Yuri and the juvenile went to the back of the victim's house, while Polanco, Mendy and Braen went to the front and knocked on the front door. Mendy and Braen were carrying firearms, and one of the men was carrying pepper spray. Raul opened the door partway, and saw one of the men pointing a 9mm assault pistol at him. He saw a second man carrying a shotgun. Because the men were unable to push open the door, they went around to the garage, kicked in the door and entered the house. A third man also entered the house armed with a pistol.

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

When they entered the house, the man with the shotgun shot at Raul, Rafael and Rodrigo to make them get down on the living room floor. The men told the three victims not to move and then Frank started beating Rafael and Rodrigo on the head with a metal pipe. Meanwhile Polanco, Braen, Mendy, Yuri and the juvenile ran towards the other rooms in the house. The juvenile grabbed two cell phones and then went outside to act as the lookout. Polanco, along with Braen, Yuri and Frank each took turns handing the juvenile electronics taken from the house to put into the backseat of the Mercedes.

Two of the men forced Rigoberto into the master bedroom and hit him on the neck with the butt of a gun, knocking him to his knees. The men then threatened to kill Rigoberto and grabbed items from the room including a television, DVDs, a stereo, a computer and speakers. At one point, Rigoberto tried to get up but the men kicked him and sprayed pepper spray in his eyes. The men then brought Rigoberto to the living room where they tied all four victims' hands and feet with duct tape. The men also hit Raul on the head and back with their hands and fists and kicked him.

Jesus was in his room watching TV when the men knocked on the door. Rafael told Jesus that the men were thieves because they had their faces covered. Jesus escaped the house, went to the next-door neighbor's house and told the neighbor to

3

call the police. Jesus then looked back at his house and saw a man dressed in black standing by a small Mercedes which was parked in the driveway. Jesus also saw two other men dressed in black who were carrying things out of the house, including a television, computer and suitcase containing other items.

Before the police arrived, Jesus saw Rosa pull up in a white Lexus SUV and park next to the driveway. Some of the items, including a duffle bag, were then transferred from the Mercedes to the Lexus. Yuri, Frank, Braen and the juvenile then got into the Lexus, while Polanco and Mendi ran towards the back of the house and left the scene.

At that same moment, the police arrived. Jesus then ran back to the house, saw that the living room was full of blood and the other victims' hands were bound. Jesus grabbed a knife from the kitchen and then he and Rigoberto, who had untied himself, cut the tape from the other victims' hands. Jesus then noticed that his Taekwondo sports bag, desktop computer and monitor, MP3 player and some money from his wallet had been taken during the home invasion. Rafael's cell phone and a car stereo were also taken from the house.

The responding officers stopped the Lexus, drew their weapons, pulled the five occupants—Rosa, Yuri, Frank, Braen and the juvenile—from the Lexus and arrested

them. The officers found a duffle bag, laundry basket, speaker box and two firearms—a 9mm assault pistol and a sawed off shotgun—in the rear of the Lexus. The Taekwondo duffle bag contained protective fighting equipment, some loose change, a wallet with cash in it, a computer monitor, CD player and two cell phones. Officers also recovered three water bottles and some MP3 players from the Lexus, as well as two flat screen televisions in the rear passenger seat of the Mercedes and a roll of duct tape in the Mercedes' trunk.

A week or two later Yuri provided investigators with Polanco's name, and he identified Polanco from a subsequent photo line-up. Rodrigo also identified Polanco from the same photo line-up.

1. Polanco contends that the trial court erred in failing to merge his aggravated assault convictions with his convictions for armed robbery. The State concedes and for the following reasons we agree.

A person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon. OCGA § 16-8-41 (a). A person commits the offense of aggravated assault when he assaults with the intent to rob or with a deadly

5

weapon which, when used offensively against a person is likely to or actually does result in serious bodily injury. OCGA § 16-5-21 (a).

> For purposes of armed robbery, the term offensive weapon includes not only weapons which are offensive per se, such as firearms loaded with live ammunition, but also embraces other instrumentalities not normally considered to be offensive weapons in and of themselves but which may be found by a jury to be likely to produce death or great bodily injury depending on the manner and means of their use. Similarly, with regard to the deadly weapon requirement for aggravated assault, our appellate courts have held that a weapon that may be found by a jury to produce death or great bodily injury based on its use in a particular case constitutes a deadly weapon. We therefore conclude that there is no element of aggravated assault with a deadly weapon that is not contained in armed robbery[.]

(Citations and punctuation omitted.) *Long v. State*, 287 Ga. 886, 889-890 (2) (700 SE2d 399) (2010).

> In determining whether one crime merges with another,
>
> we apply the required evidence test set forth in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006). Under that test, we examine whether each offense requires proof of a fact which the other does not.

(Citations and punctuation omitted.) *Thomas v. State*, 292 Ga. 429, 433 (4) (738 SE2d 571) (2013).

Here, the indictment charged Polanco with using offensive weapons—a handgun and a shotgun—to commit armed robbery against Rafael, Raul, Rigoberto and Rodrigo. Polanco was charged with committing aggravated assault against those same victims by using a handgun and a shotgun, both of which are deadly weapons, and a metal pipe, which when used offensively was likely to result in serious bodily injury. Neither the indictment, nor the jury's verdict, however, required the jury to find that Polanco committed the aggravated assaults with a metal pipe. Moreover, the trial court instructed the jury that the State had to prove as a material element of aggravated assault that an assault was made with a deadly weapon; a firearm when used as such is a deadly weapon as a matter of law; and when an indictment charges that a crime was committed in more than one way, proof that the crime was committed in one of the separate ways alleged in the indictment makes a prima facie case. Finally, these actions arose out of the same act or continuous transaction as the armed robbery against the same victims and therefore merged as a matter of fact. See *Bradley v. State*, 292 Ga. 607, 610 (1) (c) (740 SE2d 100) (2013) (since aggravated assault with a deadly weapon does not require proof of any element that armed robbery does not, convictions for both offenses will merge if the crimes are part of the same act or transaction); *Ingram v. State*, 279 Ga. 132, 133 (2) (610 SE2d 21)

7

(2005) (aggravated assault merged as matter of fact with murder conviction where assault was part of a continuous criminal act, committed at the same time and place and inspired by the same criminal intent). Accordingly, we vacate Polanco's convictions for aggravated assault and remand for resentencing.

2. Polanco contends that the trial court erred by not allowing him to ask potential jurors whether they would prejudge his case or cause them to be biased based on the large number of charges in the indictment. We disagree.

With regard to the trial court's limitation on voir dire, Polanco was entitled under OCGA § 15-12-133 to examine the individual jurors as to any matter or thing which would illustrate any bias of the juror in the case. See *Stell v. State*, 210 Ga. App. 662 (1) (436 SE2d 806) (1993). However, hypothetical questions, such as the question in this case, that would require a response from a juror which might amount to a prejudgment of the case are improper and should be excluded from voir dire. See id; see also *Anderson v. State*, 236 Ga. App. 679, 682 (3) (513 SE2d 235) (1999) (prejudgment questions may not be asked in voir dire). Accordingly, the trial court did not err in prohibiting defense counsel's examination of the prospective jurors regarding their possible reaction to the multi-count indictment.

8

3. Polanco contends that trial counsel rendered ineffective assistance. We do not agree.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citation and punctuation omitted.) *Davenport v. State*, 316 Ga. App. 234, 239 (3) (729 SE2d 442) (2012).

(a) Polanco argues that trial counsel should have objected to inadmissible hearsay and a confrontation clause violation. Specifically, Polanco argues that trial counsel should have objected to a detective's testimony regarding out-of-court

statements made by co-defendants Rosa, Alex, Yuri and Braen made after their arrests.

Here, Rosa, Yuri and the juvenile testified at trial and trial counsel vigorously cross-examined them regarding their inconsistent statements, and challenged each co-defendant's veracity based on their favorable plea agreements. Since trial counsel challenged the veracity of the co-defendants who testified under oath and were available for cross-examination, their out-of-court statements were admissible as prior consistent statements. See *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985). Accordingly, any objection to the admissibility of these statements would have been futile and did not amount to ineffective assistance. See *Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008).

Braen's statement to the detective that there were two other people involved in the case—"Pa and Mendy"—constituted inadmissible hearsay because Braen did not testifiy at trial and was not available for cross-examination. Nevertheless, it is highly unlikely that this isolated reference to someone named "Pa" contributed to the jury's verdict, given Rodrigo, Yuri and the juvenile's testimony that Polanco participated in the crimes. Accordingly, Polanco has not shown that the outcome of

the trial would have been different but for trial counsel's failure to object to Braen's statement.

(b) Polanco argues that trial counsel should have attacked Rodrigo's identification of Polanco at trial. Specifically, Polanco argues that trial counsel should have questioned the detective about the details of the photo line-up.

Contrary to Polanco's argument, the record shows that trial counsel vigorously cross-examined Rodrigo regarding his inability to clearly see the perpetrators during the crimes and his subsequent indecisiveness in picking the perpetrators out of the photo line-up. Moreover, trial counsel cross-examined the detective regarding Rodrigo's equivocation in identifying the perpetrators. Accordingly, the trial court did not err in denying Polanco's motion for new trial based on his claims of ineffective assistance of counsel.

*Judgment affirmed in part, reversed in part, and case remanded for resentencing. Doyle, P. J., and Dillard, J., concur.*