S05A0435. INGRAM v. THE STATE.
(610 SE2d 21)

HUNSTEIN, Justice.

Julius A. Ingram was convicted of malice murder, aggravated assault and concealing the death of another arising out of the strangulation killing of Christopher Robinson while both men were inmates at Valdosta State Prison.[1] He appeals contending that the evidence was insufficient to support the verdict and that the aggravated assault conviction should have merged into the murder conviction. For the reasons that follow we affirm in part and vacate in part.

1. The jury was authorized to find that appellant together with co-defendants Tallman (who was the victim's cellmate) and McCoy decided to rob and murder the victim. On June 26, 2004, the victim spoke with other inmates around 11:00 p.m. before returning to his cell. Just before the lockdown of the cells at 11:30 p.m. other inmates

---

[1] The crimes occurred on or about June 26, 2002. Ingram was indicted November 1, 2002 in Lowndes County on charges of malice murder, felony murder, aggravated assault with intent to rob and concealing the death of another. The jury did not return a verdict on the felony murder count and convicted him of the remaining three counts on November 4, 2003. He was sentenced to life imprisonment and consecutive twenty and ten year terms on November 18, 2003. A notice of appeal was filed December 3, 2003. The appeal was docketed November 9, 2004 and was submitted for decision on the briefs.

observed appellant, McCoy and Tallman in the cell with the victim, who was positioned under covers in his bunk as though asleep. After lockdown, appellant's cellmate saw appellant with a gold chain and cross the victim always wore. The victim's death was discovered the following morning. Later that day appellant attempted to sell the victim's chain to another inmate. When confronted by the other inmates, appellant admitted that he killed the victim and threatened to kill another inmate "just like I killed him." In statements the co-defendants gave police, they admitted that they took turns choking the victim until he died and that the three men then placed the victim's body on his bunk and pulled the covers over him.

This evidence was sufficient to authorize the jury to find appellant guilty of malice murder and aggravated assault beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The evidence was also sufficient to authorize the conviction for concealing the death of another because appellant's act in placing the victim's body in his bunk and pulling the covers over him "prevented others from finding the victim and thereby hindered the discovery of whether the victim was unlawfully killed. [Cits.]" *Mitchell v. State*, 274 Ga. 768, 770 (1) (560 SE2d 8) (2002). See also *Crawford v. State*, 267 Ga. 881, 882 (485 SE2d 461) (1997) (affirming concealment of death conviction where defendant misrepresented to concerned persons knocking at victim's apartment door that "everything was fine").

2. Appellant correctly asserts and the district attorney properly concedes that the conviction for aggravated assault merged as a matter of fact into the murder conviction. Although the first attempt to strangle the victim to death may have rendered him merely unconscious,[2] the evidence at trial established that this assault was not a separate and complete criminal act but rather was part of a continuous criminal act, committed at the same time and place and inspired by the same criminal intent. Thus, unlike cases such as *Stockford v. State*, 276 Ga. 241 (3) (575 SE2d 889) (2003) and *Lowe v. State*, 267 Ga. 410 (1) (b) (478 SE2d 762) (1996), where a deliberate interval existed between the assaults that indicated the completion of one criminal act before the start of a separate criminal act, the unintended interval here did not signal the completion of a separate

---

[2] Co-defendant Tallman told police that appellant "put [the victim] in a choke hold and made him go unconscious"; that after Tallman determined the victim's heart was still beating, appellant "said that he was tired, so [Tallman] took his place"; and that Tallman let go when McCoy decided he too wanted to choke the victim, but Tallman then determined the victim was dead. Co-defendant McCoy told police that he initially strangled the victim; that when the victim passed out, he released the victim but when he began to revive, appellant then choked him while McCoy held his feet; and that Tallman then in turn choked the victim, although McCoy was uncertain whether the victim was alive or dead at that time.

criminal act but signified only the temporary failure to accomplish the one intentional criminal transaction. See *Montes v. State*, 262 Ga. 473 (1) (421 SE2d 710) (1992) (disapproving case law that each of a series of attacks in quick succession constituted a "renewed assault"); *York v. State*, 242 Ga. App. 281, 295 (8) (528 SE2d 823) (2000); see also *Brown v. State*, 246 Ga. App. 60 (539 SE2d 545) (2000) (discussing cases addressing whether infliction of multiple injuries may serve as basis for separate charges). Accordingly, the judgment of conviction and the sentence imposed for aggravated assault are vacated by operation of law. See *Curtis v. State*, 275 Ga. 576, 577 (1) (571 SE2d 376) (2002).

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED FEBRUARY 7, 2005 —
RECONSIDERATION DENIED MARCH 28, 2005.

*William R. Folsom*, for appellant.

*J. David Miller, District Attorney, Robert T. Gilchrist, Justo C. Cabral III, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General*, for appellee.