**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 2, 2012**

# In the Court of Appeals of Georgia

A12A1191. CROWLEY v. THE STATE.                                    JE-046C

ELLINGTON, Chief Judge.

A Fulton County jury found Teontre Crowley guilty beyond a reasonable doubt of armed robbery, OCGA § 16-8-41 (a); aggravated assault, OCGA § 16-5-21 (a) (2) (with a deadly weapon); possession of a handgun by a person under the age of 18 years, OCGA § 16-11-132 (b); and possession of a firearm during the commission of a felony crime against another person, OCGA § 16-11-106 (b) (1). He appeals from the denial of his motion for new trial, contending that the trial court abused its discretion when it improperly dismissed a juror, that it erred in denying his motion for mistrial that was based upon the juror's dismissal, and that it erred in refusing to instruct the jury on robbery as a lesser included offense of armed robbery. He also contends that his convictions for armed robbery and aggravated assault should have

been merged for sentencing. For the following reasons, we affirm the judgment of conviction, but vacate in part Crowley's sentence and remand for resentencing.

1. Crowley contends that the trial court abused its discretion when it improperly dismissed a juror without a sound legal basis and that it erred in denying his motion for mistrial that was based upon the juror's dismissal. Pursuant to OCGA § 15-12-172, "[i]f at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, *upon other good cause shown* to the court is found to be unable to perform his duty, or is discharged *for other legal cause*, the first alternate juror shall take the place of the first juror becoming incapacitated." (Emphasis supplied.)

In this case, the record shows the following, undisputed facts. The prosecutor and the attorneys for Crowley and his co-defendant, Samuel Hartley, selected twelve jurors and one alternate juror from the panels, and the trial court told the selected jurors to sit in the jury box as their number was called out by the court's case manager. After the remaining potential jurors were dismissed, the selected jurors were sworn in and the trial court gave them initial instructions, including the specific directions that they must not speak with anyone about the case or conduct any outside investigation about the case. After the jurors were released for the day, it was

2

discovered that only 11 jurors and the alternate had been in the jury box during the oath and instructions and that Juror No. 35 had left the courtroom instead of sitting with the rest of the selected jurors, apparently because she had not heard her number when it was called. When the trial resumed the next morning, the trial court ruled that the trial would proceed with the 11 jurors and the alternate, noting that they had been selected by the parties and had been sworn in and given instructions the previous afternoon, and that it was going to excuse Juror No. 35. Crowley's counsel objected and moved for a mistrial, which was denied.

As Crowley argues on appeal, while OCGA § 15-12-172 authorizes the trial court to exercise its discretion to dismiss a juror and replace him or her with an alternate,

> it must be an informed exercise, since the erroneous replacement of a juror may under certain circumstances deprive a defendant of his valued right to have his trial completed by a particular tribunal, his sixth amendment right to a fair, impartial and representative jury, and his due process rights grounded in the entitlement to procedures mandated by state law. There must be some "sound" basis upon which the trial judge exercises his discretion to remove the juror. Dismissal of a juror for want of any factual support, or for a legally irrelevant reason is prejudicial.

3

(Citations and punctuation omitted.) *Herring v. State*, 224 Ga. App. 809, 811 (1) (481 SE2d 842) (1997).

In this case, however, the trial court dismissed the juror and seated the alternate juror before the parties gave their opening statements or any evidence was presented. Thus,

> [t]his is not a situation where the jury was deadlocked or had begun deliberations, when the need for investigation and the possibility of harmful error are heightened. [Crowley] has not shown how he was prejudiced by the use of an alternate, since pursuant to OCGA § 15-12-169[,[1]] alternates are selected in the same manner and must have the same qualifications as members impaneled as the jury. The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. The control of the pursuit of such determination is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review. Replacing the juror [in this case] had no more effect of denying [Crowley] a qualified jury than if the juror had become ill or died. The alternate juror statute was designed to alleviate situations such as these.

---

[1] See OCGA § 15-12-169 ("Alternate jurors shall be drawn from the same source and in the same manner and have the same qualifications as the jurors already sworn. They shall be subject to the same examination and challenges.").

(Citations and punctuation omitted.) *Herring v. State*, 224 Ga. App. at 811-812 (1).

See also *Scott v. State*, 272 Ga. App. 32 (1) (611 SE2d 712) (2005) (Because the trial

had not yet begun when the trial court replaced absent jurors with alternates, the

defendant could not show that he was prejudiced by the trial court's actions.).[2]

Accordingly, under the circumstances of this case, we find that the trial court's

replacement of Juror No. 35 with an alternate juror did not constitute reversible error.

---

[2] See also *Brooks v. State*, 281 Ga. 14, 18 (3) (635 SE2d 723) (2006) (The trial court dismissed a juror who had arrived to court late and replaced her with an alternate. On appeal, the defendant contended that his trial counsel was ineffective for failing to object. Noting that the trial court had discretion to discharge the juror as long as there was a sound legal basis to do so, and finding that the "juror's tardiness was a sound basis for her dismissal," this Court concluded that counsel did not perform deficiently by failing to object.) (footnote omitted); *Herring v. State*, 224 Ga. App. at 811-812 (1) (The trial court did not abuse its discretion in replacing a juror in the middle of the trial after learning that the juror could not get to the courthouse because of mechanical difficulties with his truck and it was uncertain when, and if, he would arrive.); see generally *Peek v. Kemp*, 784 F2d 1479, 1484 (I) (1) (11th Cir. 1986) (The Court concluded that, while "it would be prejudicial and constitutionally deficient for a trial judge to excuse a juror *during deliberations* for want of any factual support, or for a legally irrelevant reason," if the record shows that the juror was, in fact, too ill to effectively participate in deliberations, then the trial court had a sound basis for excusing the juror and the defendant could not show any prejudice resulting from the trial court's failure to question the juror personally before allowing the juror to leave.) (citation and punctuation omitted; emphasis supplied).

2. Crowley argues that the trial court erred when it refused to instruct the jury on robbery[3] as a lesser included offense of armed robbery.[4] The evidence presented at trial, viewed in the light most favorable to the jury's verdict,[5] showed the following facts.

At around noon on May 24, 2007, the victim, an employee of the College Park Golf Course, was mowing the grass when he was approached by two teenaged boys. One of the teenagers, who was later identified as Crowley, pointed a semiautomatic handgun at the victim and yelled at him to "give the s__t up." Crowley kept yelling while he hit the victim on the side of the head with the handgun and fired one shot into the air. As that was going on, the second teenager, who was later identified as Hartley, took a wallet, cellphone and tool from the victim. After confirming that the victim had

---

[3] See OCGA § 16-8-40 (a) (The statute states, in relevant part, that "[a] person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another . . . [b]y use of force; [or] [b]y intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another[.]").

[4] See OCGA § 16-8-41 (a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon.").

[5] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

nothing else of value to give them, the teenagers ran away. Shortly thereafter, police officers apprehended them and three other teenagers who were with them, and the victim was taken to where they were being detained, at which time he identified Crowley as the teenager who had used the handgun during the robbery.

At trial, the court refused, over Crowley's objection, to give a jury instruction on robbery as a lesser included offense of armed robbery because the uncontradicted evidence showed that a firearm was used to effectuate the armed robbery. Thus, the court concluded that, absent any evidence that the robbery was accomplished without the use of the firearm, the requested instruction on robbery was not adjusted to the evidence and was inapplicable. We agree.

When some evidence, even if slight, is presented that shows that a defendant committed a lesser included offense, the trial court should charge the jury on that offense. *Rainly v. State*, 307 Ga. App. 467, 479 (11) (705 SE2d 246) (2010). However, when the State's evidence establishes all of the elements of an offense, and there is no evidence raising the lesser included offense, the trial court does not err in refusing to give a charge on the lesser offense. Id.; see *Clark v. State*, 279 Ga. 243, 247 (7) (611 SE2d 38) (2005) (Where the uncontradicted evidence in the record "shows completion

only of the greater offenses, it is unnecessary for the trial court to charge on the lesser offenses.") (citation and punctuation omitted).

In this case, we conclude that, given the evidence presented, the trial court did not err in refusing to give a jury instruction on robbery as a lesser included offense of armed robbery. *Clark v. State*, 279 Ga. at 247 (7); see *Rainly v. State*, 307 Ga. App. at 479-480 (11) (The trial court did not err in failing to give a jury charge on robbery as a lesser included offense to armed robbery, because the evidence was uncontradicted that a gun was used to effectuate the robbery and was brandished throughout the incident.).

3. Crowley also contends that his convictions for armed robbery and aggravated assault should have been merged for sentencing. We agree.

The indictment charged Crowley with committing two crimes against a single victim: armed robbery[6] by intentionally stealing the victim's possessions "by use of a gun, an offensive weapon," and aggravated assault, under OCGA § 16-5-21 (a) (2),[7]

---

[6] See Footnote 4, supra.

[7] See OCGA § 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]"); see also OCGA § 16-5-20 (a) ("A person commits the offense of simple assault when he or she either: (1) Attempts to commit

8

"by threatening [the victim] with a gun, an object which when used offensively against a person is likely to result in serious bodily injury."

It is axiomatic that "Georgia law bars conviction for a crime that arises from the same criminal conduct included as a matter of fact or as a matter of law in another crime for which the defendant has been convicted." (Citation and punctuation omitted.) *Duncan v. State*, 290 Ga. App. 32, 33 (658 SE2d 780) (2008). To determine if an aggravated assault with a deadly or offensive weapon, indicted under OCGA § 16-5-21 (a) (2), is a lesser included offense of armed robbery, we apply the "required evidence" test set forth in *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006). *Long v. State*, 287 Ga. 886, 888 (2) (700 SE2d 399) (2010). Under that test,

> the important question is not the number of acts involved, or whether the crimes have overlapping elements, but whether, looking at the evidence required to prove each crime, one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the other crime charged.

(Footnote omitted.) *Drinkard v. Walker*, 281 Ga. at 216. In *Long*, the Supreme Court of Georgia concluded that there is no element of aggravated assault with a deadly or

a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury.").

9

offensive weapon, OCGA § 16-5-21 (a) (2), that is not contained in armed robbery, OCGA § 16-8-41 (a). *Long v. State*, 287 Ga. at 889 (2).[8] Consequently, "convictions for both offenses will merge – but only if the crimes are part of the same 'act or transaction.'" (Citations omitted.) *Thomas v. State*, 289 Ga. 877, 880 (3) (717 SE2d 187) (2011).

In this case, the evidence showed that the co-defendants' actions, which occurred either concurrently or in rapid succession, were committed as part of one uninterrupted criminal transaction and in pursuit of a specific, predetermined goal: the armed robbery of a single victim. See *Ingram v. State*, 279 Ga. 132, 133-134 (2) (610 SE2d 21) (2005) (an aggravated assault conviction merged as a matter of fact into a murder conviction, because it was committed as part of a continuous criminal act, i.e.,

---

[8] In so holding, the Supreme Court held that "the assault requirement of aggravated assault -- that the defendant attempt to commit a violent injury to the victim or place the victim in reasonable apprehension of receiving a violent injury -- [is] the equivalent of the 'use of an offensive weapon' requirement of armed robbery." (Citation and punctuation omitted.) *Long v. State*, 287 Ga. at 888-889 (2). Further, the Court held that the "deadly [or offensive] weapon" requirement of aggravated assault under subsection (a) (2) of OCGA § 16-5-21 is the equivalent of the "offensive weapon" requirement of armed robbery. Id. at 889 (2).

at the same time and place, inspired by the same criminal intent, and with no deliberate interval between the criminal acts).[9]

We conclude, therefore, that Crowley's convictions for armed robbery and aggravated assault should have been merged for sentencing. *Long v. State*, 287 Ga. at 888-889 (2); *Ingram v. State*, 279 Ga. at 133-134 (2); *Taylor v. State*, 304 Ga. App. at 398-399 (1); *Mack v. State*, 283 Ga. App. at 175-176 (3). Accordingly, we vacate Crowley's sentence on those convictions and remand this case for resentencing pursuant to this opinion.

*Judgment affirmed, sentence vacated in part, and case remanded. Phipps, P. J., and Dillard, J., concur.*

---

[9] See also *Taylor v. State*, 304 Ga. App. 395, 397-399 (1) (696 SE2d 686) (2010) (convictions for aggravated assault by striking the victim in the head with a baseball bat and armed robbery committed with "an offensive weapon, to wit: a baseball bat" merged, because the evidence showed that the defendant reached into the victim's pockets immediately after hitting him in the head with the bat); *Mack v. State*, 283 Ga. App. 172, 175-176 (3) (641 SE2d 194) (2007) (two counts of aggravated assault with a handgun, both indicted under OCGA § 16-5-21 (a) (2), merged, because there was no "ensuing interval" between the defendant's acts of pointing the gun at the victim's head and then lowering the gun's aim and shooting the victim; in other words, the acts were committed in "quick succession" as part of a single, continuous criminal act) (citations and punctuation omitted).