**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

July 16, 2014

# In the Court of Appeals of Georgia

A14A0539. LUCAS v. THE STATE.

PHIPPS, Chief Judge.

Christopher Lucas was convicted of two counts of burglary,[1] criminal damage to property (second degree),[2] theft by taking,[3] and possession of tools for the commission of a crime.[4] He contends that the trial court erred by (1) sentencing him for both burglary counts, because they were part of a single continuous act and should have merged; and (2) denying his motion for new trial based on his claim of ineffective assistance of trial counsel. Because the two burglaries merged as a matter of fact, we vacate one burglary conviction and sentence and remand the case for

---

[1] OCGA § 16-7-1 (a) (2012) (former version).

[2] OCGA § 16-7-23.

[3] OCGA § 16-8-2.

[4] OCGA § 16-7-20.

resentencing. We affirm Lucas's remaining convictions because Lucas failed to show that his trial counsel provided ineffective assistance.

1. Lucas contends that the trial court erred by sentencing him for two burglary counts instead of only one. He asserts that the charged burglary offenses merged because they were committed at the same time and place, were part of a continuous criminal act, and were inspired by the same criminal intent.

Count 1 of the indictment alleged that Lucas committed burglary when, on March 28, 2012, without authority and with intent to commit a theft therein, he entered and remained within a building of another (to wit: a Huddle House restaurant at a specified location). Count 5 alleged that Lucas committed burglary when, on the same date, without authority and with intent to commit a theft therein, he entered and remained within that same building (the Huddle House restaurant). The indictment stated that the offense alleged in Count 1 was "separate and apart from the offense alleged in Count 5" of the indictment, and that the offense alleged in Count 5 was "separate and apart from the offense alleged in Count 1."

The evidence showed the following. On March 28, 2012, a Huddle House restaurant waitress arrived at work shortly after 5:00 a.m., and found the glass on the front door broken. The waitress telephoned police and the manager. When the

2

manager arrived, she entered the store and observed that the frame of the office door was broken, the safe that had been in the office was gone, and the cash register had been pried, but not opened. A "change jar" that was kept inside the safe, containing about $400, was also missing.

A police detective arrived and spoke with the owner, who had also arrived. The owner showed the detective a surveillance video taken from the restaurant's cameras; the video was later shown to the jury.[5] The video showed the glass on the front door break and a person enter the building. The person attempted to open the cash register, but could not. He left, and returned between five and twenty minutes later. When he returned, he broke into the office with "some sort of metal thing," dragged a safe out of the office, put the safe in a vehicle, then left. A second police detective saw still photographs taken from the video and told the first detective that he recognized the person depicted therein as Lucas.

The two detectives then went to Lucas's home to interview him. Lucas told the detectives that he would return the safe to them and possibly some cash or the

---

[5] Citing technical difficulties, the state did not show at trial the entire video. In addition to showing parts of the video, the state introduced still photos taken from the video and the testimony of the owner and detectives who had viewed the video, regarding what it showed.

contents of the safe. The detectives went to the police station and waited for Lucas, but he did not arrive.

The detectives later returned to Lucas's house, which he shared with his girlfriend, T. H. T. H. told the detectives that she and Lucas took the safe from the restaurant. She also told the detectives where the safe could be found. Based on their conversation with T. H., the detectives were able to locate the safe; it was in a ravine by a roadside, and a section of the safe had been cut out. T. H. consented to a search of the home, and directed detectives to a duffle bag in the home's crawlspace. The bag contained a crow bar, a power saw, and cutting blades capable of cutting through pipes and "just about anything." Detectives also found in the crawlspace a jar like the cash jar that had been inside the safe.

"Under Georgia law, offenses merge and multiple punishment is prohibited if one offense is included in the other as a matter of law or fact."[6] "For separate offenses charged in one indictment to carry separate punishments, they must rest on distinct criminal acts. If they were committed at the same time and place and [were part] of a continuous criminal act, and inspired by the same criminal intent, they are

---

[6] *McConnell v. State*, 263 Ga. App. 686, 693 (7) (589 SE2d 271) (2003).

susceptible of only one punishment."[7] "Whether offenses merge is a legal question, which we review de novo."[8]

The version of OCGA § 16-7-1 (a) in effect in when the offenses were committed (March 2012) provided, in pertinent part, that "[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains . . . within any . . . . building . . . or any room or any part thereof." The question presented here, then, is whether Lucas's acts of entering, exiting, and reentering the same restaurant twice within a five to twenty-minute period for the purpose of committing theft can be punished as two "separate units of prosecution" under the burglary statute.[9] The state contends that the two burglary counts did not merge, because the conduct at issue was not part of a single

[7] *Hawkins v. State*, 302 Ga. App. 84, 86 (2) (690 SE2d 440) (2010); *York v. State*, 242 Ga. App. 281, 295 (8) (528 SE2d 823) (2000); *Hubbard v. State*, 168 Ga. App. 778, 779 (2) (310 SE2d 556) (1983).

[8] *Nosratifard v. State*, 320 Ga. App. 564, 570 (2) (740 SE2d 290) (2013) (citation and punctuation omitted).

[9] See *Withrow v. State*, 275 Ga. App. 110, 114 (4) (619 SE2d 714) (2005); *Smith v. State*, 290 Ga. 768, 773 (3), n. 4 (723 SE2d 915) (2012). See *Nosratifard*, supra at 570 (2), n. 8 ("Because the instant case does not involve two distinct statutory provisions, the 'required evidence' test does not apply.") (citations and punctuation omitted).

continuous act. According to the state, "the continuum of [Lucas's] act was broken when he left the premises of Huddle House for a period of time and returned to take the store's safe."[10] We disagree.

Here, both burglary counts charged Lucas with entering the same building on the same date with the intent to commit the same crime – theft. And the evidence showed that the acts were committed at the same location, were inspired by the same criminal intent (to commit theft in the Huddle House restaurant building), and were part of a continuous criminal act spanning a matter of minutes. The criminal acts were not "separated by a meaningful interval of time or with distinct intentions."[11] The interval of minutes between the acts "did not signal the completion of a separate criminal act but signified only the temporary failure to accomplish the one intentional criminal transaction."[12] The criminal conduct constituted a single course of conduct,

---

[10] (Emphasis omitted.)

[11] *Thompson v. State*, 291 Ga. App. 355, 361 (5) (662 SE2d 135) (2008) (citations omitted); see generally *Bonner v. State*, 308 Ga. App. 827, 831 (2) (709 SE2d 358) (2011) (three batteries were part of a continuous criminal act and thus merged into one).

[12] *Ingram v. State*, 279 Ga. 132, 133 (2) (610 SE2d 21) (2005) (citations omitted); *Crowley v. State*, 315 Ga. App. 755, 759-760 (3) (728 SE2d 282) (2012).

6

not separate offenses.[13] Further, without evidence of a legislative intent to allow multiple punishments for the same course of conduct, acts that constitute a continuing criminal course of conduct are not punishable separately;[14] there is no evidence of such legislative intent regarding the burglary statute. Thus, the trial court erred by failing to merge the two counts.[15] Accordingly, we vacate the conviction and sentence on one of the burglary counts, and remand the case to the trial court for resentencing.[16]

2. Lucas contends that his trial counsel provided ineffective assistance by not moving to suppress incriminating statements that he had made to detectives at his house. At trial, the detectives testified that when they interviewed Lucas at his house,

---

[13] See generally *Withrow*, supra.

[14] Id.

[15] See generally *Hubbard*, supra at 779-780 (2).

[16] See *Curtis v. State*, 275 Ga. 576, 577 (1) (571 SE2d 376) (2002); *Crowley*, supra at 757, 760 (3), n. 4; *Withrow*, supra; *Mack v. State*, 283 Ga. App. 172, 175-176 (3) (641 SE2d 194) (2007); *Ratledge v. State*, 253 Ga. App. 5, 7 (3) (557 SE2d 458) (2001); *McConnell*, supra. Compare *Crumley v. City of Atlanta*, 68 Ga. App. 69, 72-73 (22 SE2d 181) (1942) (convictions for two counts of disorderly conduct were authorized and were not part of one continuous criminal transaction, where acts occurred two to three hours apart and at different locations).

Lucas told them that he knew where the safe was and promised to return the safe and some of its contents. He also said that the safe was "heavier than we thought."

Citing OCGA § 24-8-824,[17] Lucas asserts that the incriminating statements were inadmissible because they had been induced by the detectives' promise to obtain a bond for him and their suggestion that he would not be prosecuted if he returned the property. When it denied Lucas's motion for new trial based on the ineffective assistance claim, the court found that Lucas had not shown, inter alia, a reasonable probability that the outcome of the trial would have been different had his statements been suppressed.

> [I]n order to prevail on his claim of ineffective assistance of counsel, [Lucas] must show under *Strickland v. Washington*,[18] that his attorney's performance was deficient, and that, but for such deficiency, there is a reasonable probability that the proceeding would have ended differently. Moreover, in order to meet this burden, [Lucas] must

---

[17] OCGA § 24-8-824 (former OCGA § 24-3-50) provides: "To make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." See *Woodall v. State*, 294 Ga. 624, 629 (4), n. 5 (754 SE2d 335) (2014) (noting that former OCGA § 24-3-50 is now codified as OCGA § 24-8-824 as part of the new Georgia Evidence Code which took effect on January 1, 2013). Ga. L. 2011, pp. 99, 214, §101. The trial in this case commenced in January 2013.

[18] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

overcome the strong presumption that his attorney's representation fell within the wide range of reasonable professional conduct.[19]

This court reviews a trial court's legal conclusions de novo, and will uphold a trial court's findings of fact on a claim of ineffective assistance of counsel unless those findings are clearly erroneous.[20]

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion."[21]

Further, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.[22]

---

[19] *White v. State*, 281 Ga. 20, 23 (4) (635 SE2d 720) (2006) (citations omitted).

[20] See id.; *Harris v. State*, 314 Ga. App. 816 (726 SE2d 455) (2012).

[21] *Ross v. State*, 313 Ga. App. 695, 697 (1) (b) (722 SE2d 411) (2012) (citation and punctuation omitted).

[22] *Coney v. State*, 316 Ga. App. 303, 306 (3) (a), (b) (728 SE2d 899) (2012) (citation and punctuation omitted).

The detectives testified at trial about their interview of Lucas at his residence; a portion of the interview was recorded, and a video and audio recording of the interview was played at trial. The evidence showed that during the interview, the detectives told Lucas that: the restaurant owners wanted the safe back; "[t]hat's all they want, is their safe back. That's all you gotta do. Give these people their safe back"; "[i]f Huddle House gets their safe, and their little bit of cash back, they're good to go"; if Lucas helped them get the safe back, Huddle House, the detectives, their boss, and the district attorney (DA) would be happy; and the detectives would tell the DA that Lucas had "worked with us, and see if they can help you out." The detectives added that if the DA's office "wanted" Lucas, it would have prosecuted him on an unrelated burglary charge, but had not, and that the DA's office "doesn't care about Chris Lucas." The detectives also purportedly promised to arrange for bond for Lucas.

Assuming that the detectives' statements to Lucas suggested that he would not be prosecuted if he returned the property, and assuming further that the statements constituted an impermissible hope of benefit (and that Lucas was induced thereby to

10

make the incriminating statements),[23] and that Lucas has thus made a strong showing that the evidence would have been suppressed had counsel made the motion,[24] his ineffective assistance claim still must fail. This is because Lucas has failed to show a reasonable probability that the outcome of the trial would have been different had his statements been excluded, given the other substantial evidence of his guilt.[25]

*Judgment affirmed in part and vacated in part; case remanded for resentencing. Ellington, P. J., and McMillian, J., concur.*

---

[23] See *Canty v. State*, 286 Ga. 608, 610-611 (690 SE2d 609) (2010) (reversing conviction where trial court admitted appellant's incriminating statement which had been induced by the promise of a hope of benefit; appellant had been told that confessing to the crime could result in a shorter term of punishment). Regarding whether a promise to secure bond is a hope of benefit which would render a confession inadmissible, see generally *Pounds v. State*, 189 Ga. App. 809, 810 (1) (377 SE2d 722) (1989) (a reduction of bond is a collateral benefit, not the hope of lighter punishment which renders a confession inadmissible).

[24] See generally *Ross v. State*, 313 Ga. App. 695, 697 (1) (b) (722 SE2d 411) (2012).

[25] See *Miller v. State*, 293 Ga. 638, 640 (2) (748 SE2d 893) (2013); *Wallace v. State*, 272 Ga. 501, 503-504 (3) (530 SE2d 721) (2000); *Askea v. State*, 153 Ga. App. 849, 851-852 (3) (267 SE2d 279) (1980). Compare *Suluki v. State*, 302 Ga. App. 735, 738 (1) (691 SE2d 626) (2010).