**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 15, 2022**

# In the Court of Appeals of Georgia

A20A0996. JOHNSON v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Ricky Johnson guilty of one count of burglary and four counts of theft by taking, and the trial court imposed a total sentence of forty years in prison. The trial court denied Johnson's motion for a new trial, and, on appeal, we affirmed his convictions and sentences. See *Johnson v. State*, 357 Ga. App. XXV (Case No. A20A0996) (Nov. 2, 2020) (unpublished) ("*Johnson I*"). In that decision, as relevant here, we rejected Johnson's claim that some of his theft-by-taking convictions should merge into each other. See id., slip op. at 14-15 (8) (b). On certiorari review, the Supreme Court of Georgia vacated our holding in that regard on the ground that we applied the wrong legal analysis in evaluating Johnson's merger claim. See *Johnson v. State*, 313 Ga. 155, 160-161 (4) (868 SE2d 226) (2022)

("*Johnson II*"). The case is now again before us following the Supreme Court's remand with instructions to apply the proper analysis. See id. at 161 (4). For the reasons that follow, we vacate three of Johnson's four theft-by-taking convictions and sentences and remand this case for the trial court to resentence Johnson after merging those convictions into his remaining theft-by-taking conviction.

The Supreme Court set forth the following relevant facts in its decision:

In 2013, Johnson was convicted of one count of burglary (Count 1), three counts of theft by taking based on the theft of three different Ford trucks (Counts 2, 3, and 4), and one count of theft by taking based on the taking of multiple pieces of property, including, among other things, a riding lawnmower, a plasma cutter, and a welder (Count 5). The crimes occurred on November 1, 2007, in a large building containing a shop and office space on the property of Reid & Reid Contractors (the "company"). Of the three stolen trucks, two were Ford flatbeds and one was a Ford service truck. One flatbed truck was parked outside the company's building; the other was parked inside a garage in front of the building; and the service truck was parked inside the shop. The thefts occurred overnight during a span of time that lasted between five and six hours.

The company had five surveillance cameras recording activity in its building. A video from one of those cameras, which recorded activity in the southwest corner of the shop, was introduced into evidence at trial. That video first showed Johnson in the shop area at 10:54 p.m. on

October 31, 2007. It also showed that Johnson appeared to leave the shop and the property after completing the crimes at about 4:30 a.m.

Between those two times, Johnson could be seen in the camera frame of the surveillance video that covered the southwest corner of the shop except for a number of short periods of time, none of which lasted more than 15 minutes. The video shows . . . Johnson . . . examining company property and loading it onto a service truck by hand and by using the company's forklift. . . . At 3:28 a.m., he drove the service truck out of the shop bay and out of the camera frame. Johnson reappeared in the camera frame at 3:34 a.m., driving a different piece of equipment — a John Deere Gator — into the shop. Johnson parked the Gator inside the shop and then walked out of the shop bay door. He is next seen on the video driving one of the company's flatbed trucks into the shop about 15 minutes later, at 3:49 a.m. At that point, he parked the flatbed truck inside the shop and began loading it with company property . . . . Around 4:30 a.m., he drove the flatbed truck out of the shop bay. After that, Johnson walked back into the shop and drove the Gator out of the shop at 4:34 a.m. He then walked back into the shop again and drove the forklift out of the shop at 4:36 a.m. Johnson is not seen on the video after 4:36 a.m.

Ultimately, both the service truck and flatbed truck that Johnson drove out of the shop bay were stolen, as was an additional flatbed truck that does not appear in the surveillance video. In addition, a riding lawnmower, a plasma cutter, a toolbox, and a welder (among other property) were stolen that night. Neither the Gator nor the forklift were stolen.

3

As it turns out, the three stolen trucks were equipped with GPS trackers, and the trucks — along with the stolen equipment — were located later on the morning of November 1 in a wooded area behind a residence about 10 miles from the shop. At trial, the State presented (among other evidence) the surveillance video described above, as well as evidence that Johnson's palm print was found on the forklift that was still parked outside the company's shop. . . . Johnson was found guilty on all counts and sentenced to a total of 40 years in prison: 20 years on the burglary count; 10 consecutive years each on Counts 2 and 3; and 10 concurrent years on Counts 4 and 5.

*Johnson II*, 313 Ga. at 155-157 (1) (footnotes omitted).

On appeal, we rejected Johnson's contention that two of his three theft-by-taking convictions for the theft of the trucks should have merged, such that he could be convicted of only one count of theft by taking for the theft of the trucks.[1] See *Johnson I*, Case No. A20A0996, slip op. at 14-15 (8) (b). In reaching that conclusion, we evaluated Johnson's merger claim using the "actual evidence" test enunciated in *Braswell v. State*, 245 Ga. App. 602, 604 (4) (538 SE2d 492) (2000), overruled in part

_____

[1] Before the Supreme Court, Johnson expanded the scope of his merger claim, "contending that three of the four theft-by-taking convictions should have merged, including the conviction for Count 5, which involved the non-truck property." *Johnson II*, 313 Ga. at 157 (2), n. 3 (emphasis omitted); see *Nazario v. State*, 293 Ga. 480, 485 (2) (b) (746 SE2d 109) (2013) ("[M]erger claims cannot be waived because a conviction that merges as a matter of law or fact with another conviction is void . . . .").

4

as recognized in *Johnson II*, 313 Ga. at 158 (3) & n. 6. See *Johnson I*, Case No. A20A0996, slip op. at 15 (8) (b). Under that test, "[t]he key question in determining whether a merger has occurred [was] whether the different offenses are proven with the same facts." *Braswell*, 245 Ga. App. at 604 (4).

On certiorari review, the Supreme Court held that we erred by relying on *Braswell*'s "actual evidence" test, which governed "merger for multiple counts of different crimes instead of multiple counts of the same crime — the latter being the type of merger claim Johnson presented . . . with respect to his convictions for theft by taking."[2] *Johnson II*, 313 Ga. at 158 (3) (emphasis omitted). The Court further explained that, to address a merger claim premised on multiple convictions for the *same* crime, a court must "ask whether those crimes arose from a single course of conduct and, if so, whether the defendant can face multiple convictions and sentences under a unit-of-prosecution analysis." Id. at 159 (4) (citation and punctuation omitted). The Court observed that the course-of-conduct evaluation involves examining the defendant's intent and the time and location of the crimes at issue. See

---

[2] Although not directly relevant to this case, the Court in *Johnson II* also concluded that *Braswell*'s "actual evidence" test was effectively overruled by *Drinkard v. Walker*, 281 Ga. 211, 214, 217 (636 SE2d 530) (2006), in which the Supreme Court adopted the "required evidence" test to determine when one offense is included in another. See *Johnson II*, 313 Ga. at 158 (3) & n. 6.

id. And the Court emphasized that the proper unit-of-prosecution test entails evaluating the statutory text to determine "whether a particular course of conduct involves one or more distinct 'offenses' under the statute." Id. (citation and punctuation omitted). We now turn to the relevant analysis, as directed by the Supreme Court.

1. "The question of multiple punishments (as opposed to multiple prosecutions) for the same criminal conduct is addressed under the rubric of substantive double jeopardy." *Smith v. State*, 290 Ga. 768, 772 (3) (723 SE2d 915) (2012) (citation and punctuation omitted). Under that rubric, we first must determine "whether [the] crimes arose from a single course of conduct." *Johnson II*, 313 Ga. at 159 (4) (citation and punctuation omitted). Factors relevant to that analysis include: (i) whether Johnson "acted with the same or differing intents"; (ii) "whether the crimes occurred at the same place"; and (iii) "whether the crimes occurred at the same time or were separated by some meaningful interval of time." Id.; see also *Lucas v. State*, 328 Ga. App. 741, 743 (1) (760 SE2d 257) (2014).

The facts described above indicate that Johnson acted with the same intent — to steal the company's property — from the moment he first entered the company's building shortly before 11:00 p.m. on the night in question until he left the property

6

at approximately 4:30 a.m. the following morning. Moreover, the crimes all occurred in the same targeted area: the building containing the company's shop and office space, a garage in front of the building, and a parking area outside of the building. Finally, while several minutes passed between the times Johnson could be seen exiting the building with equipment and returning to retrieve more items, those brief passages of time — on the facts of this case — are more appropriately viewed as resulting from limits on how much property Johnson could move in each trip (and therefore ancillary to a single plan to steal multiple items), and not as breaks during which Johnson ceased all criminal activity and then formed a new intent to steal other items. See *Ingram v. State*, 279 Ga. 132, 133-134 (2) (610 SE2d 21) (2005) (concluding that an "unintended interval" between two episodes of choking the victim "did not signal the completion of a separate criminal act but signified only the temporary failure to accomplish the one intentional criminal transaction"). Consequently, the intervals between Johnson's appearances on the surveillance recording are not "meaningful" for purposes of the relevant analysis. Our review of the pertinent factors therefore indicates that all of the thefts at issue here "arose from a single course of conduct." *Johnson II*, 313 Ga. at 159 (4) (citation and punctuation omitted); see *Lucas*, 328 Ga. App. at 743-744 (1) (concluding that the acts underlying

7

two burglary convictions constituted a single course of conduct where they occurred in the same building and "were not separated by a meaningful interval of time or with distinct intentions," insofar as an "interval of minutes between the acts" did not indicate a completed, "separate criminal act" but rather showed only a "temporary failure" to complete the intended transaction) (citations and punctuation omitted).

2. Having determined that all of Johnson's theft-by-taking convictions are premised on a single course of conduct, we now must address whether he may face multiple convictions and sentences under a unit-of-prosecution analysis. *Johnson II*, 313 Ga. at 159 (4). Where, as here, a defendant is charged with multiple counts of the same crime, "the merger analysis requires careful interpretation of the criminal statute at issue to identify the 'unit of prosecution' — 'the precise act or conduct' that the legislature criminalized." *Scott v. State*, 306 Ga. 507, 509 (2) (832 SE2d 426) (2019) (citation and punctuation omitted); see *Coates v. State*, 304 Ga. 329, 330 (818 SE2d 622) (2018) ("whether a single course of conduct can result in multiple convictions and sentences under the same statute" implicates the doctrine of substantive double jeopardy, "and the 'unit of prosecution,' or the precise act criminalized by the statute, must be identified"). In making this determination, the pertinent question is whether the plain language of the statutory scheme reveals "a legislative intent to allow

8

multiple punishments" for "acts that constitute a continuing criminal course of conduct." *Lucas*, 328 Ga. App. at 744 (1); accord *Terrell v. State*, 353 Ga. App. 780, 784 (2) (839 SE2d 274) (2020); see *Johnson II*, 313 Ga. at 159 (4) ("[T]he text of the statute itself best reflects the legislative choice of whether a particular course of conduct involves one or more distinct 'offenses' under the statute.") (citation and punctuation omitted); *Coates*, 304 Ga. at 330 ("Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on this legislative choice.") (citation and punctuation omitted); *State v. Marlowe*, 277 Ga. 383, 383-384 (1) (589 SE2d 69) (2003) ("It is for the legislature to determine to what extent certain criminal conduct has demonstrated more serious criminal interest and damaged society and to what extent it should be punished.") (citation and punctuation omitted).

Our construction of such statutory authority is de novo. *Coates*, 304 Ga. at 330. To determine the appropriate unit of prosecution under the statutory scheme, an appellate court applies "fundamental rules of statutory construction" requiring courts "to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage" so as to "effectuate the intent of the Georgia legislature." Id. (citation and punctuation

omitted). In so doing, we must "consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole." Id. (citation and punctuation omitted).

There are two statutes relevant to our analysis here: OCGA § 16-8-2, which generally defines the crime of theft by taking, and OCGA § 16-8-12, which defines various penalties for violations of OCGA § 16-8-2 (and other theft statutes).[3] OCGA § 16-8-2 provides: "A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."[4] OCGA § 16-8-12 provides, in relevant part:

---

[3] Unless otherwise noted, all statutes cited in this opinion refer to those in effect when the crimes at issue here were committed in 2007. See *Torres v. State*, 361 Ga. App. 149, 154 (3) (863 SE2d 399) (2021) ("[I]n general, a crime is to be construed and punished according to the provisions of the law existing at the time of its commission.") (citation and punctuation omitted); *Searcy v. State*, 162 Ga. App. 695, 698 (2) (291 SE2d 557) (1982) (this Court applies the sentencing law in effect at the time the crime was committed); accord *Richardson v. State*, 334 Ga. App. 344, 346-347 (1) (779 SE2d 406) (2015).

[4] This statute has remained unchanged since 1978, well before the crimes at issue here were committed.

(a) A person convicted of a violation of Code Sections 16-8-2 through 16-8-9 shall be punished as for a misdemeanor except:

> (1) If the property which was the subject of the theft exceeded $500.00 in value, by imprisonment for not less than one nor more than ten years or, in the discretion of the trial judge, as for a misdemeanor; [or]

> . . .

> (5) (A) The provisions of paragraph (1) of this subsection notwithstanding, if the property which was the subject of the theft was a motor vehicle . . . , by imprisonment for not less than one nor more than ten years or, in the discretion of the trial judge, as for a misdemeanor; provided, however, that any person who is convicted of a second or subsequent offense under this paragraph shall be punished by imprisonment for not less than one year nor more than 20 years.[5]

(a) We first address whether Johnson's motor-vehicle-theft convictions merge with each other. The parties have not cited, and research has not revealed, any Georgia appellate decisions explicitly applying the unit-of-prosecution analysis to the

---

[5] The current version of this statute no longer contains any references to motor vehicles. See Ga. L. 2012, pp. 899, 909, § 3-2; compare OCGA § 16-8-12 (2022), with OCGA § 16-8-12 (2007).

statutes at issue here.[6] Based on its plain language, the act or conduct prohibited by OCGA § 16-8-2 is the unlawful taking or appropriation of "any property of another with the intention of depriving him of the property." Thus, it is the taking or appropriation of "any property of another" with the requisite intent that forms the default unit of prosecution under OCGA § 16-8-2.

---

[6] In several older decisions pre-dating the Supreme Court's adoption of the unit-of-prosecution analysis (and applying different variations of the statutory scheme at issue here), this Court held that (a) motor-vehicle theft merges with simultaneously committed non-motor-vehicle theft offenses, and (b) multiple counts of simultaneously committed motor-vehicle theft similarly merge with each other. See *Woods v. State*, 209 Ga. App. 604, 604, 606 (2) (434 SE2d 146) (1993) (holding that the defendant's conviction for theft by taking cash from a store merged into his conviction for theft by taking a pickup truck from the store because the two thefts "were committed at the same time and place and [were] parts of one continuous criminal act"); *Hubbard v. State*, 168 Ga. App. 778, 778-779 (1)-(2) (310 SE2d 556) (1983) (holding that the defendant's conviction for theft by taking a stereo, checkwriter, and keys from a car dealership merged into his conviction for theft by taking a car from the dealership because "[m]otor vehicle theft is not a separate crime from the general theft statute"); *Breland v. State*, 135 Ga. App. 478, 479 (1) (b) (218 SE2d 153) (1975) (holding that the defendant's "theft of . . . two trucks, taken from the same place at the same time from the same owner under the same circumstances, can only constitute one offense"); *Johnson v. State*, 130 Ga. App. 134, 134-138 (1)-(3) (202 SE2d 525) (1973) (physical precedent only) (concluding that the theft of a moving van and its contents constituted a single transaction such that a conviction under the general theft-by-taking statute barred a conviction under a separate motor-vehicle-theft statute then in effect); see also generally *Marlowe*, 277 Ga. 383 (adopting the unit-of-prosecution analysis in 2003).

That does not end our inquiry, however, as the precise act or conduct punished by OCGA § 16-8-12 (a) (5) (A) — the relevant sentencing statute — is "the theft [of] a motor vehicle." On the one hand, by preceding the phrase "motor vehicle" with the article "a" — rather than the adjective "any," which precedes the phrase "property" in OCGA § 16-8-2 — the General Assembly arguably expressed an intent to define the unit of prosecution for theft by taking a motor vehicle as "the theft [of] a motor vehicle." OCGA § 16-8-12 (a) (5) (A). Compare Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/a (defining "a," in relevant part, as "used as a function word before singular nouns when the referent is unspecified"), with id., https://www.merriam-webster.com/dictionary/any (defining "any," in relevant part, as "one or some indiscriminately of whatever kind"; "one, some, or all indiscriminately of whatever quantity"; and "unmeasured or unlimited in amount, number, or extent") (last visited June 14, 2022). And that proposition finds some support in the Supreme Court's interpretation of the words "a" and "any" in other statutes. Compare *Smith*, 290 Ga. at 774 (3) (concluding that: (i) in the statute making it a crime "to flee or attempt to elude *a pursuing police vehicle or police officer*" when signaled to stop one's vehicle, "it is the act of fleeing from *an individual police*

13

*vehicle or police officer* after being given a . . . signal to stop from *that individual police vehicle or officer*, and not just the act of fleeing itself, that forms the proper unit of prosecution"; and (ii) a defendant who ignores signals by multiple police vehicles to stop may be sentenced on multiple counts of attempting to elude an officer) (citation and punctuation omitted; second and third emphases supplied), with *Edvalson v. State*, 310 Ga. 7, 10 (849 SE2d 204) (2020) (holding that the phrase "any visual medium" in the statute prohibiting various acts related to the production of certain visual media "must be interpreted as a quantitative term, implying no specific quantity and having no limit"), and *Coates*, 304 Ga. at 331 (concluding that: (i) the phrase "any firearm" in the statute prohibiting possession of firearms by convicted felons "does not imply a specific quantity; the quantity is without limit"; and (ii) the statute therefore "permits only one prosecution and conviction for the simultaneous possession of multiple firearms") (citation, punctuation, and emphasis omitted).

On the other hand, that analysis does not fully address the issue presented here as to the interplay between two applicable statutory provisions: in particular, whether the language in OCGA § 16-8-12 (a) (5) (A) sufficiently establishes an unambiguous legislative intent to operate as an exception to the default unit of prosecution under

14

OCGA § 16-8-2 and to refine the unit of prosecution as the "the theft [of] *a* motor vehicle," rather than the theft of "*any* property of another." (Emphases supplied.) Notably, "the General Assembly has elsewhere employed clear, unambiguous language with respect to the applicable unit of prosecution in numerous other contexts throughout the Georgia Code." *Carr v. State*, 363 Ga. App. 35, 44 (2) (b) (870 SE2d 531) (2022) (citation and punctuation omitted); see OCGA §§ 12-9-55 (d) (providing that "[e]ach day of continued unlawful registration" of certain motor vehicles "shall be a separate offense"); 16-11-106 (e) (providing that "[a]ny crime committed in violation of" statutory provisions criminalizing possession of a firearm or knife during the commission of certain crimes "shall be considered a separate offense"); 34-8-256 (b) (providing, in a statute criminalizing false representations in connection with employment insurance claims, that "[e]ach such act" of making a false statement or representation "shall constitute a separate offense"); 43-50-45 (c) (providing, in a statute criminalizing the unlicensed practice of veterinary medicine, that "each act of an unlawful practice shall constitute a distinct and separate offense"). "We must presume, then, that the General Assembly's failure to do so in

15

[the statutes at issue here] was a matter of considered choice." *Carr*, 363 Ga. App. at 44 (2) (b) (citation and punctuation omitted).

"[I]f the General Assembly fails to denote the unit of prosecution in the statute, as is the case here, then courts must resolve the ambiguity and are constrained to do so in favor of the defendant charged with having violated the statute." *Carr*, 363 Ga. App. at 45 (2) (b) (citation and punctuation omitted). "Indeed, our Supreme Court has made clear that a criminal statute must be construed strictly against the State, and if reasonable minds disagree[ ] as to whether the statute is, in fact, ambiguous, the rule of lenity requires us to interpret it in favor of the defendant." Id. (citation and punctuation omitted); accord *Edvalson*, 310 Ga. at 8-9; *Coates*, 304 Ga. at 331, 332, n. 4; *Scott v. State*, 356 Ga. App. 152, 157, 160 (846 SE2d 241) (2020); see also generally *Haley v. State*, 289 Ga. 515, 527 (2) (b) (712 SE2d 838) (2011) (the rule of lenity requires courts to interpret statutes in favor of a criminal defendant "[t]o the extent that . . . tools of statutory construction leave doubt about the meaning of the statute").

Here, reasonable minds can disagree as to whether OCGA § 16-8-12 (a) (5) (A), when read in conjunction with OCGA § 16-8-2, see *Coates*, 304 Ga. at 330-331, unambiguously defines the unit of prosecution as a single motor vehicle. Interpreting

16

these statutes in favor of Johnson, as we must, we hold that Johnson may not be convicted or sentenced for multiple counts of motor-vehicle theft where, as here, the offenses were committed during a single course of conduct. See *Carr*, 363 Ga. App. at 46 (2) (b).

(b) That leaves us to address whether Johnson's motor-vehicle-theft convictions merge with his non-motor-vehicle-theft conviction. On the one hand, the General Assembly's decision to delineate the penalties for motor-vehicle theft and non-motor-vehicle theft in separate subsections of OCGA § 16-8-12 may reflect a legislative choice to define separate units of prosecution for each act. On the other hand, this statutory scheme instead may reflect a legislative choice merely to: (i) allow a theft by taking of one or more motor vehicles to be punished as a felony regardless of whether the motor vehicles at issue satisfy the $500 minimum-value requirement in OCGA § 16-8-12 (a) (1); and (ii) provide for increased penalties for second or subsequent offenses where the stolen property includes one or more motor vehicles. Moreover, as discussed above, the General Assembly here has not employed the "clear, unambiguous language" used in other contexts to define discrete units of prosecution. *Carr*, 363 Ga. App. at 44 (2) (b) (citation and punctuation omitted); see Division 2 (a), above; see also, e.g., OCGA § 16-5-40 (c) ("The offense of kidnapping

17

shall be considered a separate offense and shall not merge with any other offense."). The statutory language therefore does not unequivocally reflect a legislative choice to punish motor-vehicle theft separately from non-motor-vehicle theft committed during the same course of conduct.

Thus, because reasonable minds also can disagree as to whether OCGA § 16-8-12 (a) (5) (A) unambiguously defines a unit of prosecution distinct from that defined in OCGA § 16-8-12 (a) (1), the rule of lenity requires us to hold that Johnson may not be convicted of or sentenced for multiple counts of theft by taking where, as here, the motor-vehicle and non-motor-vehicle theft offenses were committed during a single course of conduct.[7] See *Carr*, 363 Ga. App. at 46 (2) (b). We therefore vacate his convictions and sentences under Counts 3, 4, and 5 and remand this case for the trial court to merge those convictions into Johnson's conviction for Count 2 and resentence him accordingly. See *Sears v. State*, 292 Ga. 64, 73-74 (6) (734 SE2d 345) (2012); *Mikell v. State*, 286 Ga. 722, 724-725 (3) (690 SE2d 858) (2010); *Carr*, 363 Ga. App. at 46 (2) (b) (i)-(ii); *Haynes v. State*, 322 Ga. App. 57, 62 (2) (743 SE2d 617) (2013).

---

[7] This holding is in accord with several decisions that pre-dated the Supreme Court's adoption of the unit-of-prosecution analysis. See note 6, above.

3. Because Divisions 1-8 (a) and 9-20 of our decision in *Johnson I* remain unchanged — as they were unaffected by the Supreme Court's decision in *Johnson II* — we otherwise affirm Johnson's convictions and sentences.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Miller, P. J., and Mercier, J., concur.*

19